721 So.2d 393 (1998)
Robin O'NEILL, Appellant,
v.
Charles E. STONE, Appellee.
No. 97-05307.
District Court of Appeal of Florida, Second District.
November 13, 1998.
*394 John E. Swisher, St. Petersburg, for Appellant.
William L. Penrose, St. Petersburg, for Appellee.
FULMER, Judge.
Robin O'Neill appeals a nonfinal order that directed her to return to Florida with her infant child so that the putative father could exercise the visitation he was awarded as the respondent in a domestic violence proceeding. We reverse.
This action began in September of 1997 when O'Neill filed a standardized petition for injunction for protection against domestic violence pursuant to section 741.30, Florida Statutes (1997). In her petition she indicated that she resided with the respondent, Charles Stone, and that they were the unmarried parents of a child born May 17, 1997. O'Neill sought an injunction restraining Stone from committing any acts of domestic violence. She also requested the court to award her custody of the infant child and to order Stone to pay child support.[1] The trial court granted the injunction and subsequently entered a separate custody, visitation and support order based on the findings and recommendations of a general master before whom the parties had appeared in a separate hearing. A few weeks after the hearing before the general master, but before the trial court entered the order adopting the general master's report, O'Neill left the state with the minor child and moved in with her father in New Jersey. Upon learning of her departure, Stone filed an emergency motion seeking the return and temporary custody of the child. At a hearing held four days after Stone's motion was filed, and at which O'Neill was not present, the trial court entered an order transferring temporary custody to Stone and also issued an order directing law enforcement to pick up the minor child. Upon learning of the pick-up order, O'Neill obtained counsel and filed an emergency motion to set it aside.
On November 26, 1997, a hearing was held on O'Neill's motion. O'Neill returned to Florida to attend the hearing after being denied the opportunity to testify by telephone. Also present were O'Neill's former employer, babysitter and sister, each of whom were going to be asked to testify about O'Neill's living conditions with Stone, his lack of care for the child, and his violent temper. However, the trial court indicated that because of insufficient time, they would not be allowed to testify. Instead, counsel for each *395 party presented argument, after which the trial court orally ruled that the child was to be returned to Florida for Christmas. Because factual representations or argument by counsel made during a hearing do not constitute competent evidence to support a trial court's ruling, neither the trial court nor this court may consider any factual recitals made by counsel as having been proven. See Blimpie Capital Venture, Inc. v. Palms Plaza Partners, Ltd., 636 So.2d 838, 840 (Fla. 2d DCA 1994). Therefore, we have omitted the argument of counsel from our summary of the facts in this case.
After the trial court made its oral ruling, O'Neill's counsel requested the opportunity to proffer the testimony of the witnesses and O'Neill on the question of whether it was reasonable for O'Neill to return to Florida. Only O'Neill's testimony was proffered, during which she explained that she left Florida on October 25, 1997, because she could not afford to remain. Stone did not support the child and she had received no money from him prior to leaving. O'Neill described the incidents that resulted in her fear of Stone and that illustrated his lack of understanding of the child's medical problems. After receiving the proffered testimony, the trial court stated, "as of Christmas she's to stay here unless I decide that it's okay to do something else." On December 15, 1997, the trial court entered an order that set aside the pick-up order, but also directed O'Neill to return to Florida for Christmas day visitation and to relocate to Florida on or before January 1, 1998. This is the nonfinal order from which O'Neill appeals.
O'Neill argues that the trial court abused its discretion by ordering her to return to Florida because there was no provision in any of the trial court's orders that she obtain court approval prior to leaving the state with the child and because the trial court failed to consider any of the factors that should be considered in making a determination on relocation by a custodial parent. Stone argues that the enactment of section 61.13(2)(d), Florida Statutes (1997), imposes an obligation on a custodial parent to seek permission from the court to relocate if the relocation will materially affect the current schedule of contact and access with the noncustodial parent. Stone points out that O'Neill failed to request a hearing pursuant to section 61.13(2)(d) so that the parties could address the relevant statutory factors.
This case is complicated by the fact that the relocation issue arises in a domestic violence proceeding involving unmarried parents where no paternity judgment had been obtained. We first observe that O'Neill left the state before the trial court entered the order establishing Stone's visitation rights. While O'Neill was on notice that the general master was recommending a visitation schedule, she appeared before the general master pro se and was given no notice that she was required to seek court approval before leaving the state. Just prior to the time O'Neill first sought temporary custody, the law granted a custodial parent a rebuttable presumption in favor of relocation and the burden of rebutting the presumption was on the noncustodial parent. See Russenberger v. Russenberger, 669 So.2d 1044 (Fla.1996). A 1997 amendment to section 61.13(2)(d) removed this presumption.[2] At the time O'Neill left the state, the new statute had been in effect almost four months.
We need not decide in this case whether section 61.13(2)(d) mandates that a custodial parent seek court approval prior to relocating as Stone contends. It is clear that when O'Neill filed her emergency motion to set aside the pick-up order and returned to Florida for the hearing on this motion, the relocation issue was then before the court for determination. It was, therefore, incumbent upon the trial court to consider the factors set forth in section 61.13(2)(d). However, the trial court focused exclusively on the fact that O'Neill left the state without telling Stone and infringed on his rights as a parent to have visitation and a meaningful relationship with his six-month-old child. The trial court did not conduct a hearing as required *396 by section 61.13(2)(d) to consider the factors enumerated therein regarding relocation.
Not only did the trial court fail to consider these factors, it refused to allow O'Neill an opportunity to present any testimony by the witnesses who were ready to testify on her behalf. The trial court was unwilling to allow the hearing to extend into the lunch hour and only allowed argument of counsel prior to making its ruling. Consequently, the trial court ordered O'Neill to return to Florida with the child without having considered any testimony at all. Furthermore, from our reading of the record, it appears that the trial court gave no consideration to the fact that the dispute regarding the infant child was being litigated in a domestic violence proceeding where O'Neill was seeking protection from the child's father who had heretofore failed to legally establish the paternity of this child. Under these circumstances, we conclude the trial court abused its discretion by ordering O'Neill to return to the state so that the infant child would be available for visitation. We hasten to add that our reversal should not be read as approval for a custodial parent to disobey visitation orders. Instead, we observe that in this case the context and timing of O'Neill's departure do not support the trial court's apparent conclusion that she left the state for the purpose of circumventing the court-ordered visitation schedule.
This case is a perfect example of why domestic violence proceedings should not be allowed to become the primary forum in which custody, visitation and support issues are litigated. With the exception of the provisions in the initial injunction prohibiting acts of domestic violence, these entire proceedings have addressed exclusively custody, visitation and support issues. We do not believe that the legislature intended chapter 741 to be used in this manner, especially in a case such as this where the respondent has not even established his legal relationship as the father of the child. The better practice in such a case would be for the trial court to enter a temporary order, such as the order adopting the general master's report, and direct the parties to litigate their subsequent custody and visitation disputes in a proper paternity proceeding where the orders entered would remain in effect beyond the temporary lifespan of most injunctions.
Because no notice has been filed with this court indicating that the injunction in this case has been dissolved, we must assume that it remains in effect and that the issue on appeal has not become moot. Therefore, we reverse the order of the trial court directing O'Neill to relocate to Florida with the minor child and remand for further proceedings in accordance with this opinion.
Reversed and remanded.
ALTENBERND, A.C.J., and CASANUEVA, J., Concur.
NOTES
[1] Section 741.30(6)(a), Florida Statutes (1997), provides that injunctions may award temporary custody, visitation rights and support for a minor child "[o]n the same basis as provided in chapter 61."
[2] See Chapter 97-242, Laws of Florida, effective July 1, 1997, which provides in part: "No presumption shall arise in favor of or against a request to relocate when a primary residential parent seeks to move the child and the move will materially affect the current schedule of contact and access with the secondary residential parent."