Dear Ms. Gilmore:
Early last year, we provided you with an opinion in response to your inquiry about interpretation of the domestic violence protective order forms. 83 Opinions of the Attorney General ___ (1998) [Opinion No. 98-004 (January 28, 1998)]. Specifically, you asked for our opinion on the meaning of the phrase "reasonable and necessary force," as used in the optional portion of the order that directs law enforcement officers to return to the custodial parent a child kept in violation of the order.
In our prior opinion, we did not address the specific question you posed because we concluded that the domestic violence statute itself did not authorize an order to law enforcement officers to forcibly return a minor child to the custodial parent. Upon further review and reflection, we believe that we must also examine whether the equitable power of the courts could provide the requisite authority. As outlined in Part I of this opinion, consideration of the courts' inherent equitable powers raises doubt about the conclusion expressed in our prior opinion. In any event, the question of judicial authority to issue such an order is one best left to the determination of the courts in an appropriate case. Accordingly, we will attempt to provide an answer to the question that you originally posed on the premise that the courts have the authority to issue such an order.
In our opinion, the concept of "reasonable and necessary force" is not amenable to a precise definition. Rather, it connotes an objective standard that takes into account the specific circumstances encountered by the officer executing the order. In Part II of this opinion, we offer general guidance applicable to some of the circumstances that an officer is likely to encounter.
 I Judicial Power to Order Use of Force
A. Absence of Statutory Authority and its Significance
The domestic violence law authorizes courts to issue temporaryex parte orders and, following notice and an opportunity for an adversary hearing, protective orders that provide various types of relief to victims of domestic violence. See Annotated Code of Maryland, Family Law Article ("FL"), § 4-501 et seq. Among other things, such orders may "award temporary custody of a minor child of the respondent and a person eligible for relief." FL, § 4-505(a)(2)(vi), 4-506(d)(6). The standard protective order form used in the courts, Form DV-3, reflects this grant of authority by including a paragraph 7, in which the court orders "that custody of ____________________ is awarded to ___________________." The same language appears in Form DV-2, the standard ex parte order form.
Your question focused on language that immediately follows the portion of the order forms that awards custody. The order forms each include a box that the judge may check for the purpose of including the following provision: "Law enforcement officers are ordered to use all reasonable and necessary force to return the minor child(ren) to the custodial parent at time of service or as soon as possible after entry of this Order."
In our prior opinion, we looked solely at the domestic violence statute and determined that this statute did not grant the courts the authority to direct law enforcement officers to use force to carry out an award of temporary custody in a domestic violence order. Although that conclusion was correct as a matter of statutory construction, the analysis was unnecessarily truncated. While a statute may be a source of judicial authority in this area, it need not be the only source. A statute does not necessarily displace whatever common law authority the courts possess in the absence of the statute. There is no indication in the domestic violence law that the Legislature intended any limitation of the courts' inherent equitable powers. Accordingly, an analysis of judicial power to issue such an order must also consider the courts' inherent common law powers.
B. Common Law Authority
 1. Implied Power Generally
In Maryland, the circuit courts are imbued with "full common-law and equity powers and jurisdiction in all civil and criminal cases . . . ." Annotated Code of Maryland, Courts and Judicial Proceedings Article ("CJ"), § 1-501. See also Maryland Constitution Article IV, §§ 1, 1A. Although the District Court is ordinarily a court of limited jurisdiction,[1] in domestic violence proceedings the District Court has the "powers of a court in equity." CJ, § 4-404. In addition to the specific powers conferred on the courts by the Constitution and by statute, the judiciary enjoys certain "implied or inherent powers." The Court of Appeals has adopted the following description of those powers:
 In order to accomplish the purposes for which they are created, courts must also possess powers. From time immemorial, certain powers have been conceded to the courts, because they are courts. Such powers have been conceded, because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence. . . .
 The inherent power of the court is the power to protect itself; the power to administer justice . . .; the power to promulgate rules for its practice; the power to provide process where none exists.
Commission on Medical Discipline v. Stillman, 291 Md. 390, 400,435 A.2d 747 (1981) (quoting State v. Cannon, 221 N.W.2d 603,603-4 (Wis. 1928)); Attorney General v. Waldron, 289 Md. 683,691, 426 A.2d 929 (1981) (same); cf. Hamzavi v. Bowen,126 Md. App. 492, 730 A.2d 274 (1999) (circuit court may appoint receiver under its equity power in absence of statutory authorization).
Although the courts have these inherent powers, the Legislature retains the authority to limit their exercise to the extent that a power is "not an essential [one] inherent in the courts in the discharge of their constitutionally mandated duty to administer justice." Stillman, 291 Md. at 402 (holding that legislative limitation on courts' jurisdiction to stay administrative revocation of license did not violate separation of powers). The domestic violence law is statutory in nature and the content of orders issued in proceedings under that law is specified in detail in the statute. See FL, § 4-505(a)(2), 4-506(d). However, unlike the physician licensing scheme in Stillman, the domestic violence statute did not purport to restrict the powers that the courts might otherwise be able to exercise.
It is possible that the courts' inherent powers include the authority to require that law enforcement officers enforce a temporary custody provision of a order issued under the domestic violence statute. Such power may be found in a conjunction of the courts' equity authority to determine custody of minors and their inherent power to create process necessary to effect court orders with "reasonable and necessary" force.
2. Parens Patriae Authority of Courts Over Minors
Maryland courts have common law authority to act in the best interests of children within their jurisdiction. The Court of Appeals has described this authority in broad terms:
 The parens patriae jurisdiction of circuit courts in this State is well established. The words "parens patriae," meaning "father of the country," refer to the State's sovereign power of guardianship over minors and other persons under disability. . . . It is a fundamental common law concept that the jurisdiction of courts of equity over such persons is plenary so as to afford whatever relief may be necessary to protect the individual's best interests.
Wentzel v. Montgomery General Hospital, Inc., 293 Md. 685, 702,447 A.2d 1244 (1982). The determination of child custody is a function of the court's equity powers, regardless of statutory authorization. Ross v. Hoffman, 280 Md. 172, 174, 372 A.2d 582
(1977). Moreover, when a court has authority to determine the custody of a minor, such authority might reasonably be thought to include an ancillary element, such as the power to direct appropriate court officers to enforce such an order with "reasonable and necessary force."[2]
 3. Creation of Process to Forcibly Carry Out Court Orders
By rule and by the adoption of standard forms, the courts frequently designate the content and create process for the execution of court orders.[3] For example, in other contexts involving the civil seizure of individuals, the Court of Appeals has adopted several rules that provide for "body attachments" — essentially the forcible execution of a subpoena by law enforcement officers. See, e.g., Rules 2-510(i) (circuit court civil subpoenas); 3-510(i) (District Court civil subpoenas); 4-266(d) (subpoenas in criminal cases); 4-267 (material witnesses in criminal cases). There is also statutory authorization for the issuance of body attachments in most such instances. See
CJ, § 9-201, 9-203; see also 81 Opinions of the Attorney General
___ (1996) [Opinion No. 96-035 (November 12, 1996)] (writ of attachment for juvenile offender lawful only if court has jurisdiction such that writ constitutes an "order of court" under CJ, § 3-814).
However, one of the rules authorizing a body attachment arguably is not based upon statutory authority. In particular, Rule 16-706(d)(3)(e) of the attorney disciplinary rules allows a court to issue a body attachment for a witness who has failed to respond to a subpoena issued in a matter before a bar inquiry panel. There appears to be no specific statutory authorization for body attachments in such proceedings. Although this rule contains a cross reference to the rule for subpoenas in civil cases, it seems unlikely that its authority derives from CJ, § 9-201, which pertains to witnesses summoned to court. Rather, the rule appears to be ultimately based on the inherent power of the courts to regulate the practice of law and to discipline attorneys. See generally Attorney General v. Waldron,289 Md. at 690-93; 82 Opinions of the Attorney General ___ (1997) [Opinion No. 97-001 (January 6, 1997)] (court rule may authorize issuance of subpoenas and grant absolute immunity to persons involved in attorney disciplinary process without legislative authorization).
Other court rules specify certain measures that a court may employ when a person fails to comply with a court order mandating or prohibiting certain action. See Maryland Rules 2-648(a) and 3-648. If a person fails to comply with a judgment that mandates an affirmative act, the court may, among other things, "direct that the act be performed by some other person appointed by the court . . ." Rules 2-648(a), 3-648. Again, these rules do not appear to be based on any specific statutory authorization but on the inherent power of the courts to create process to vindicate court orders.
The special ad hoc committee of the courts that created the domestic violence form orders apparently believed that the courts currently possess the authority to order law enforcement officers to enforce custody orders with reasonable and necessary force in the absence of specific legislation. See Coburn v. Coburn,342 Md. 244, 254 n. 9, 674 A.2d 951 (1996) (describing origin of domestic violence form orders). There apparently have been no reported judicial decisions either affirming this authority or finding it wanting.
4. Similar Process in Other States
The Florida Supreme Court has adopted a form for domestic violence cases that provides that "Law enforcement officers shall use any and all reasonable and necessary force to physically deliver the minor children . . . to the custodial parent." SeeIn re Family Law Rules of Procedure 663 So.2d 1049, 1205
(Fla.S.Ct. 1995); In re Amendments to the Florida Family Law Rules ofProcedure, 717 So.2d 914, 918, 924 (Fla.S.Ct. 1998). We did not locate any reported cases construing this provision in an actual order.[4] However, it is notable that the Florida domestic violence statute, in contrast to the Maryland statute, explicitly authorizes law enforcement agencies to enforce protective orders. In particular, the Florida statute provides that a protective order may include a provision "[o]rdering such other relief as the court deems necessary for the protection of a victim of domestic violence including injunctions or directives to law enforcement agencies . . . ." Fla. Stat. § 741.30(6)(a)(7). Thus, the Florida form order does not derive solely from the court's inherent equity powers.
At least two other states have adopted legislation that authorizes law enforcement officers to arrest a respondent who resists a temporary custody order entered in a domestic violence case. See La.Rev.Stat. Ann., Title 14, § 79(E) ("Law enforcement officials shall use every reasonable means, including but not limited to immediate arrest of the violator, to enforce [a protective order that may include a custody provision]."); Mo. Ann. Stat. § 455.085(5) ("When a person against whom an order of protection has been entered fails to surrender the children to the person to whom custody was awarded in an order of protection, the law enforcement officer shall arrest the respondent, and shall turn the minor children over to the [custodial parent]."). Neither of these provisions has been tested in the courts or has otherwise been the subject of a reported judicial interpretation.
Finally, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"),[5] a model statute published in 1997 by the National Conference of Commissioners on Uniform State Laws, contains a provision that allows courts to issue warrants to law enforcement officials to take immediate custody of a child if the parent who has physical custody is likely to cause harm to the child or to flee the jurisdiction with the child. UCCJEA at § 311, 9 Uniform Laws Annotated, 1999 Supp. at 289-90. The commentary to the UCCJEA states: "The warrant may authorize entry upon private property to pick up the child if no less intrusive means are possible. In extraordinary cases, the warrant may authorize law enforcement to make forcible entry at any hour." Maryland has not adopted the UCCJEA.[6] There are no reported cases applying this provision of the UCCJEA.
There appears to be little guidance from other states on the inherent power of the courts to order law enforcement officers to effect temporary custody orders in domestic violence proceedings, much less on the use of reasonable and necessary force to carry out such an order.
C. Authorization to Enforce Order
The form orders direct "[l]aw enforcement officers" to effect the temporary custody portion of the order. However, absent statutory authorization, not all law enforcement officers may be authorized to carry out such an order.
When a Maryland court issues an order based upon its common law powers directing enforcement of a custody order by means of "all reasonable and necessary force," the court may require the sheriff to carry out the order. At common law, it was the sheriff's obligation, among other things, to serve various writs, summonses, and other orders on behalf of the courts. Soper v.Montgomery County, 294 Md. 331, 336-37, 449 A.2d 1158 (1982);Green v. State, 122 Md. 288, 295 (1914) (common law "power and authority" of sheriff necessary to work of courts). Other law enforcement officers, however, do not have a comparable common law duty to carry out court orders. For example, most police departments are the creature of statute and possess only the powers contained in their authorizing legislation. See Soper v.Montgomery County, 294 Md. at 344-45 n. 6 (comparing powers of sheriffs with various local police agencies). Whether a law enforcement officer other than a sheriff is authorized to enforce a temporary custody order in a domestic violence case would depend upon the power conferred upon that officer by statute.
D. Judicial Construction of Inherent Powers
Thus, there is a possible basis for judicial authority to order the use of force to compel compliance with a custody order under the domestic violence statute and general authority for a sheriff to carry out such an order. Although we have expressed reservations about the circumstances in which such power, if it exists, could be exercised,[7] it is the province of the judiciary to define its common law and equity powers, and we will not attempt to demarcate those powers in this opinion. The courts' future adjudication of cases with specific facts are the better and more appropriate vehicle for defining those powers. As suggested in our prior opinion, an amendment of the domestic violence law would resolve any question of the court's authority to issue such an order and a law enforcement officer's authority to execute it. For purposes of this opinion, we will accept the premise that the "reasonable and necessary force" provision of the domestic violence order form is a permissible exercise of the court's common law authority. In the remainder of this opinion, we attempt to provide the guidance that you seek for those charged with carrying out such an order.
 II Use of Reasonable and Necessary Force
A. Objective Standard
The "reasonable and necessary force" that is authorized by court orders issued on the domestic violence forms is not defined in the forms or in the domestic violence statute. We must therefore look to other sources to interpret this phrase — most appropriately, the extent of force that the law permits officers to exert in executing similar types of court orders. The cases demonstrate that the phrase "reasonable and necessary force" cannot be reduced to a formula. Law enforcement officials charged with executing such orders may understandably adopt a cautious approach to this new area of enforcement.[8]
The courts have applied the concept of "reasonable and necessary force" in a variety of circumstances in which the use of force by law enforcement officers has been challenged. The phrase "reasonable and necessary force" has been consistently interpreted by the courts as requiring a law enforcement official to act in an objectively reasonable fashion. In a case arising out of an investigatory stop, the Supreme Court described the test as follows:
 Determining whether the force used to effect a particular seizure is `reasonable' . . . requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . . [T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case. . . . .
. . . .
 The `reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.
Graham v. Connor, 490 U.S. 386, 396-97 (1989) (quotations omitted). Maryland courts have repeatedly relied upon Graham
for a framework to analyze whether challenged law enforcement action constituted excessive force. See Branch v. McGeeney,123 Md. App. 330, 348-49, 718 A.2d 631 (1998) (arrest of minor);Williams v. Prince George's County, 112 Md. App. 526, 547,685 A.2d 884 (1996) (warrantless arrest); Wilson v. State,87 Md. App. 512, 520, 590 A.2d 562, cert. denied,324 Md. 325, 597 A.2d 422 (1991) (arrest following chase);see also Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998) (arrestee in pretrial detention); Elliott v. Leavitt, 99 F.3d 640,642 (4th Cir. 1996), cert. denied, 117 S.Ct. 2512
(1997) (DWI arrest). In each case the specific circumstances surrounding the questioned use of force are determinative.
Law enforcement officers may encounter a variety of circumstances when they execute the temporary custody provision of a domestic violence order. Service of the custody order may be the culmination of a series of proceedings involving the same parties and children or it may be the first notice a respondent receives of any legal proceeding. Officers may encounter resistance from a number of persons including the respondent, other adults who are caring for or have actual custody of the children, and even the minors who are the subject of the custody order. The likely presence of children requires consideration of their safety when force is used. Although we cannot prescribe the actions that an officer should take under every conceivable scenario, we will attempt to offer general guidance based upon common situations.
It is beyond dispute that an order to forcibly carry out a child custody order places even the most scrupulous law enforcement officer in a difficult position. In our opinion, the order form should not be construed as diminishing the broad discretion that an officer needs when executing such an order in light of particular circumstances. In volatile situations involving the custody of a child, emotions inevitably run high. A person's initial resistance to a lawful order may recede as emotions cool. A tactful approach by an officer may accomplish more with less emotional or physical damage to the child than a demand for instantaneous compliance and an impulsive resort to force. Accordingly, an officer who reasonably refrains from using force should not be found in violation of the order. Similarly, when there is no suggestion that the child is in danger, the officer cannot be faulted for seeking additional guidance from the court that issued the order.[9]
B. Circumstances Under Which Force May Be Used
 1. Notice of Order and Authority
In most circumstances, an officer executing an order should first identify himself or herself and inform the individuals present of the order and its contents, furnishing a copy if appropriate. This is akin to the general rule that requires a law enforcement officer to give notice to an individual to be arrested of the officer's authority and intention to effect the arrest. 5 Am.Jur.2d Arrests §§ 92, 93; cf. Miller v. UnitedStates, 357 U.S. 301, 307 (1958) (common law requires officer to announce his lawful authority and purpose prior to entering a home to make an arrest or perform a search). See also Wynn v.State, 117 Md. App. 133, 153-65, 699 A.2d 512 (1997), rev'd onother grounds, 351 Md. 307, 718 A.2d 588 (1998) (surveying law on knock and announce rule).
This initial step may avoid resistance that may result from a misunderstanding of the officer's authority and purpose. Identification of the officer and the officer's purpose may be particularly important when serving a temporary ex parte order as it may be a respondent's first notice of the court proceedings. In addition, this initial step will inform others present who are not parties to the underlying action of the court order, perhaps increasing the likelihood that those individuals will cooperate with the officer's request to transfer a child to the officer's custody. An explanation by the officer as to why and where a child is to be taken may also minimize the stress suffered by a child subject to the order.
It is also important that the officer identify the children subject to the temporary custody order.[10] The need to use force may be avoided in some circumstances by announcing the identity of the child named in the temporary custody order. As in the case of an arrest, the officer should verify, as best the officer can under the circumstances, that the child taken into custody is in fact the child named in the temporary custody order. See Green v. Brooks, 125 Md. App. 349, 725 A.2d 596
(1999).
2. Determining the Extent of Force Necessary
If it appears that the custody transfer will take place voluntarily and without incident, no force need be exerted to effect the transfer. If, however, it becomes apparent to the officer that cooperation is not forthcoming, the officer must consider whether the use of force is reasonable and, if so, the extent of force appropriate under the circumstances. Essentially the officer may use the force necessary to enable an officer to carry out the order. 5 Am.Jur.2d Arrest § 105; cf. Watkins v.State, 288 Md. 597, 610, 420 A.2d 270 (1980). The duty that an officer is directed to perform under a protective or temporaryex parte order is to return the child to the custodial parent, which includes removing the child from the custody of the non-custodial parent or third party and transporting the child to the custodial parent. The officer may take into account the age and vulnerability of the child, the nature and extent of the opposition from the respondent, third party or child, and the officer's personal safety.
3. Forcing Entry Into Dwelling
Ordinarily, forcible entry is not permitted to effect service of civil process. See 82 Opinions of the Attorney General ___ (1997) [Opinion No. 97-019 at pp. 7-9 (August 21, 1997)]. Moreover, law enforcement officers may not enter a residence, much less use force to do so, without a search warrant for that location. 5 Am.Jur.2d Arrest, § 119. "[T]he plain wording of the Fourth Amendment admits no exemption from the warrant requirements when the search of home is for a person rather than for a thing." Steagald v. United States, 451 U.S. 204, 214 n. 7 (1981). Although an arrest warrant suffices to allow law enforcement officers to enter the residence of the person named in the warrant to effect the arrest, a search warrant must be obtained to enter the house of a third party.Id. at 221-23; cf. Herd v. State, 125 Md. App. 77,724 A.2d 693 (1999) (affirming burglary conviction of bondsman who entered third party's residence to search for fugitive).
We could find no case law suggesting that a temporary child custody order by itself would be considered the equivalent of an arrest warrant that would permit law enforcement officers to enter the child's current residence without the consent of the adult who owns or possesses that residence. See Karoly v. LehighCounty Sheriff's Department, 1988 WL 85743 at *7 (E.D. Pa. 1988) (not objectively reasonable for an officer experienced in serving warrants and custody orders to interpret an ex parte temporary custody order "as co-extensive with a search warrant"). Nor is it clear that the consent of a petitioner in a domestic violence proceeding for law enforcement officers to enter a residence shared with the respondent would satisfy Fourth Amendment concerns. Compare State v. Verhagen, 272 N.W.2d 105 (Wis. 1978) (wife who had recently left marital home had no authority to consent to warrantless search of home) and May v. State,780 S.W.2d 866 (Tex.App. 1989) (consent of estranged spouse not sufficient to justify warrantless search) with United States v.Lawless, 465 F.2d 422 (4th Cir. 1972) (valid search of defendant's trailer when done with consent, and at initiative, of estranged wife); State v. Ratley, 828 P.2d 78 (Kan. 1992) (wife who had left house as result of abuse could consent to search).See generally United States v. Matlock, 415 U.S. 164, 169-72
(1974) (discussing third party consent to searches of premises).
Accordingly, if officers serving an order containing a temporary child custody provision are refused entry to a residence where the child is located, prudence dictates that the officers refrain from forcible entry. The officers may be able to obtain an arrest warrant for an uncooperative respondent for violation of a protective order under FL, § 4-509.[11] In the course of entering the residence and arresting the respondent for that violation, the officers may also carry out the custody provision of the order.
The officer may also make a forcible entry into a residence in certain circumstances if necessary to take custody of a child in serious, immediate danger. In particular, FL, § 5-709 authorizes a representative of the local social services agency to obtain assistance of law enforcement, including forcible entry into a residence, if the representative has previously been denied entry into the residence and there is probable cause to believe that the child is in serious, immediate danger.
C. Persons Against Whom Force May Be Used
 1. Use of Force Against the Child
If a child who is the subject of the custody order resists the officer, the officer must consider the child's age and vulnerability in determining whether to obtain custody of the child by using force against the child. A hysterical 10-year old may be readily subdued by minimal force and persuasive conversation. A threatening teenager may not be as easily controlled, which may require a decision whether to use significant physical force against a minor. Such force should rarely be employed against a minor. But see Branch,123 Md. App. at 351 (holding that the use of force against a minor, namely forcibly handcuffing a minor arrestee for her own protection, was "entirely reasonable under the circumstances"). The situation presented by a hostile older child may be better addressed by social workers, the custodial parent, an attorney appointed for the child, or even a judge.[12]
 2. Use of Force Against Respondent
If the resistance comes from the respondent named in the domestic violence order, the officer should not hesitate to use reasonable and necessary force to carry out the order. The order itself is based upon a finding that the respondent has acted in an abusive manner against the petitioner. In the case of a protective order, the respondent has already had notice of and an opportunity to participate in the proceedings and to contest the allegations of abuse giving rise to the order. See FL, § 4-504, -505 and -506. In addition, the respondent may be subject to arrest and prosecution for hindering a police officer under these circumstances.[13] See Wildberger v. State,74 Md. App. 107, 114-15, 536 A.2d 718 (1988) (mother convicted of hindering for interfering with officer's attempt to examine child for evidence of abuse). The facts in each case will determine the nature and extent of the force reasonably necessary to execute the order.
As noted above, certain other states permit or require the officer to arrest the non-custodial parent subject to the protective order upon that parent's failure or refusal to return the children to the custodial parent. See, La.Rev.Stat. Ann., Title 14, § 79; Mo. Ann. Stat. § 455.085(5). Maryland's order form does not itself grant such authority to an officer executing a protective order. Such authorization could be an appropriate subject of clarifying legislation.
3. Use of Force Against a Third Party
Should the officer encounter opposition from a third party not subject to the protective or temporary ex parte order — e.g., a grandparent or day care provider — the decision of whether to use force should be weighed carefully. Absent an indication of danger to the child, it may be best for the officer to withdraw from the situation. The officer could wait to execute the order until the child is in the custody of the respondent named in the order or the officer could return to the issuing court, identify the individual with custody of the child, and seek an amendment to the order specifically addressing this individual.[14]
D. Considerations of Safety
 1. Safety of the Child
Presumably, the child or children subject to the order will be present at the time an officer attempts to execute the temporary custody portion of the order. In determining whether and to what extent force should be used, the officer should weigh heavily the child's physical and emotional safety. If the officer is considering using force against the non-custodial parent or third party care giver, the officer should consider whether such force will place the child at risk of physical harm. This determination should be based upon the child's proximity to the officer and other individual, the level of hostility facing the officer, and the age of the child. Unless the officer has reason to fear for the child's safety if not removed immediately, it would be a rare circumstance in which a child's physical safety should be placed in jeopardy. Even if the officer would be privileged to use force against the non-custodial parent or third party, the officer owes a duty to the child to use that force in a reasonable manner with respect to the child. Essentially, an officer has a "double responsibility-one to the prospective arrestee not to use unnecessary force against him, and one to the public at large to use even reasonable force in a reasonable manner." Giant Food v.Scherry, 51 Md. App. 586, 589-90, 444 A.2d 483 (1982) (finding that use of deadly force to stop a fleeing felon, though permissible as against the felon, was not reasonable where innocent bystanders were placed in jeopardy by the officer's action); see Restatement 2d Torts §§ 75, 137. Although most children may be upset when taken into custody by an officer, the officer should also consider the additional emotional harm to the child if force is used against the child's parent or other care giver in the child's presence.
If the officer has reason to believe that the child is in danger in the custody of the respondent or a third party, then the scales tip in favor of using whatever force is necessary to remove the child. Cf. Restatement 2d Torts §§ 76 (privilege to defend third person when that person would be entitled to act in self-defense), 156 (privilege ancillary to duty of protection). This analysis would be the same as that performed under the statutes permitting law enforcement and social service officials to obtain immediate custody of a child believed to be in serious, imminent danger. FL, § 5-709 (permitting removal of a child and the use of "reasonable force, if necessary," to gain entry if the officials have probable cause to believe the child to be in "serious, immediate danger"); CJ, § 3-814(a)(3) (permitting a law enforcement officer to take custody of a child when there are "reasonable grounds" to believe the child is in immediate danger).
2. Officer Safety
Finally, an officer must consider the officer's own safety in determining whether and to what extent force is reasonably necessary. If the officer reasonably believes that he or she is in danger, the officer should retreat or use whatever force is reasonably necessary for self-protection. 5 Am.Jur.2d Arrests
§ 109; see Tennessee v. Goren, 471 U.S. 1 (1985); Elliott v.Leavitt, 99 F.3d 640, 642 (4th Cir. 1996), cert. denied,117 S.Ct. 2512 (1997).
E. Civil Liability and Immunity
Even officers who follow these guidelines and exercise the utmost discretion in using force to execute a custody order may still encounter civil litigation challenging their actions. Such litigation typically may assert claims based upon alleged violations of federal constitutional or statutory rights under42 U.S.C. § 1983, violations of State constitutional provisions, and common law torts.[15] This opinion is not the occasion for canvassing all possible claims that might be conceived against law enforcement officers or the defenses that the officers may have. However, we offer some brief comments on official immunities that are available.
To the extent that an officer is sued in an individual capacity under § 1983 by a person against whom the officer used force, the officer may assert qualified immunity as a defense.[16] An inquiry into a qualified immunity defense follows the objective reasonableness test: if the force employed was reasonable and necessary, there is no constitutional violation and the officer is entitled to qualified immunity. See Branch,123 Md. App. at 348-49 (discussing defendants' entitlement to immunity under theGraham standard). This holds true regardless of the officer's intentions: "[A]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Shoemakerv. Smith, 353 Md. 143, 725 A.2d 549, 558 (1999) (quotingGraham, 490 U.S. at 397).
An officer of a local police department may also be sued in an official capacity under § 1983 only to the extent that the complaint challenges "a statute, regulation, policy, or custom of the governmental entity" the officer is implementing. Ashton v.Brown, 339 Md. 70, 111-12, 660 A.2d 447 (1995). Although there is no qualified immunity available to the officer in such an action, neither is the officer liable individually for damages.DiPino v. Davis, 354 Md. 18, 729 A.2d 354, 369 (1999).
With respect to common law tort claims, an officer may assert public official immunity. An officer who asserts public official immunity may be relieved of liability so long as the officer acted without malice or gross negligence and within the scope of the officer's public duties. See Annotated Code of Maryland, State Government Article, § 12-105 (referencing the immunity of State personnel set forth in CJ, § 5-522(b)); Shoemaker v.Smith, 353 Md. 143, 725 A.2d 549, 557 (1999). This immunity would apply to an allegation of excessive force made against an officer executing a protective order. See Branch,123 Md. App. at 349; see also Davis v. Muse, 51 Md. App. 93, 98-99,441 A.2d 1089 (1982) (holding that lower court erred in failing to instruct jury that it must find malice to hold a police officer liable for state tort claims in an excessive force case). Local law enforcement officers enjoy a similar immunity. See DiPino v. Davis, 354 Md. 18,729 A.2d 354, 369-71 (1999); James v. Prince George's County,284 Md. 294, 396 A.2d 255 (1979) (public officials who perform discretionary acts in furtherance of official duties entitled to qualified immunity); CJ, § 5-302(b) (under Local Government Tort Claims Act, local government employees protected against execution of a tort judgment where the employee did not act with actual malice).[17]
Neither the officer or the officer's jurisdiction has immunity under Maryland law from suits based upon violations of State constitutional rights. Clea v. Mayor and City Council ofBaltimore, 312 Md. 662, 667 n. 3, 541 A.2d 1303 (1986). Unlike the law under § 1983, no distinction is made as to whether such claims are asserted in an individual or official capacity.Ritchie v. Donnelly, 324 Md. 344, 373-74, 597 A.2d 432 (1991). Similarly, while a local government entity has no respondeatsuperior liability under § 1983 with respect to alleged State constitutional violations, a local government entity is subject to liability for the officer's actions under the doctrine ofrespondeat superior, although the LGTCA may assess and distribute liability differently than would the common law.DiPino v. Davis, 354 Md. 18, 729 A.2d 354, 371-73 (1991).Ashton v. Brown, 339 Md. 70, 112, 660 A.2d 441, 468 (1995).
 III Conclusion
In summary, the direction to use "reasonable and necessary force" to execute a temporary child custody provision in a domestic violence order may be based on the inherent powers of the courts, although this proposition is not free from doubt. An amendment of the domestic violence law that explicitly authorizes law enforcement officers to enforce child custody orders could resolve that question. When an officer uses such force, the officer's conduct must be objectively reasonable, taking into consideration the specific factual circumstances presented to the officer. An officer will be protected from liability under § 1983 for use of objectively reasonable force and may be immune from tort liability for actions taken without malice or gross negligence.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
 Jack Schwartz Assistant Attorney General
 Kathleen Hoke Dachille Assistant Attorney General
Family Law — Domestic Violence — Courts and Judges — ImmunityTorts — Use of Force to Return Child Kept in Violation of CustodyOrder
[1] Maryland Constitution, Art. IV, § 41A; CJ, § 1-601.
[2] This power may also derive in part from the common law rights of the custodial parent. The Court of Criminal Appeals of Texas has held that a custodial parent has the right under common law to use reasonable and necessary force to retain custody of a child against a threat of abduction. Whitman v. State,203 S.W.2d 230 (Tex.Crim. 1947). A protective order could be viewed as transferring this type of authority to law enforcement officials. Unfortunately, the Texas court did not discuss the nature and extent of force considered reasonable and necessary.
[3] The State Constitution grants rulemaking authority to the Court of Appeals and, to the extent permitted by the Court of Appeals or otherwise by law, to the lower courts. Maryland Constitution, Article IV, § 18(a). The Court of Appeals' rules are legislative in nature and have the force of law although they must be consistent with the federal and State constitutions.See 82 Opinions of the Attorney General ___ (1997) [Opinion No. 97-001 (January 6, 1997), Slip Op. at p. 2 n. 1].
This rulemaking authority, of course, is limited to "the practice and procedure in and the administration of the [courts]." Maryland Constitution, Article IV, § 18(a). The Court of Appeals recently noted, but did not answer, the question whether it could confer on masters by rule the power to arrest.See State v. Wiegmann, 350 Md. 585, 595 n. 4, 714 A.2d 841
(1998).
[4] It may be the case that courts are reluctant to make custody determinations in a domestic violence proceeding, in the absence of an indication of danger to the child. One court applying the Florida rule in a case not involving the use of force lamented that domestic violence proceedings are ill-suited to make permanent determinations of child custody and related matters. See O'Neill v. Stone, 721 So.2d 393 (Fla.App. 1998)
[5] This uniform law is intended to update the Uniform Child Custody Jurisdiction Act which was adopted in substance by all 50 states, including Maryland. See FL 9-201 et seq.
[6] To date, only Alaska and Oklahoma have adopted the UCCJEA. 9 Uniform Laws Annotated, 1999 Supp. at p. 257.
[7] One court has suggested that such power exists only when the child is at concrete risk of harm. In re Rose, 54 A.2d 297,300 (Pa.Super. 1947). Moreover, as noted in our prior opinion, it is another of the court's inherent powers — contempt — that is the ordinary means by which courts secure compliance with their orders. Lynch v. Lynch, 342 Md. 509, 519, 677 A.2d 584
(1996).
[8] The fact that an officer has authority to use force in a particular circumstance does not necessarily imply that the officer has a duty to use force. Cf. Ashburn v. Anne ArundelCounty, 306 Md. 617, 510 A.2d 1078 (1986). Rather, the law generally treats the use of force as "privileged" if necessary to carry out the officer's underlying duty to execute a court order.See Restatement Torts 2d, § 145 ("One . . . executing an order of a court . . . is privileged, if such process or order is valid or fair on its face, to use such force against the person of another . . . as is authorized by the order or is reasonably necessary for . . . the execution of the order.")
[9] For example, if the officer is uncertain whether particular conduct violates the court order, the officer could return to the court for clarification or perhaps for an order initiating a contempt proceeding against the respondent.
[10] Officers may consider whether to have the custodial parent accompany them for this purpose. The presence of the custodial parent may permit the officers to turn the child over to that parent immediately and avoid the myriad issues that can arise concerning the care and custody of the child after the child is obtained from the respondent. Cf. Shoemaker v. Smith,353 Md. 143, 725 A.2d 549 (1999) (tort action based in part on actions of sheriff's deputies who handcuffed and held children at police station after seizing them as part of investigation of suspected child abuse).
[11] That provision states:
 (a) A person who fails to comply with the relief granted in an ex parte order under § 4-505(a)(2)(i), (ii), (iii), (iv), or (v) of this subtitle or in a protective order under § 4-506(d)(1), (2), (3), (4), or (5) of this subtitle is guilty of a misdemeanor and on conviction is subject, for each offense, to:
 (1) for a first offense, a fine not exceeding $1,000 or imprisonment not exceeding 90 days or both; and
 (2) for a second or subsequent offense, a fine not exceeding $2,500 or imprisonment not exceeding 1 year or both.
 (b) An officer shall arrest with or without a warrant and take into custody a person whom the officer has probable cause to believe is in violation of an ex parte order or protective order in effect at the time of the violation.
FL, § 4-509. It is notable, however, that this section does not make failure to comply with a child custody order under either FL, § 4-505(a)(vi) or FL, § 4-506(d)(6) a basis for a criminal charge. Accordingly, an officer would be unable to obtain an arrest warrant under FL, § 4-509 for a person who violated only the child custody provisions of an order.
If the General Assembly amends the statute to provide explicit authority for an officer to use force to carry out a custody order in a domestic violence case, such an amendment might also add failure to comply with a custody order to the list of offenses in FL, § 4-509.
[12] An older child's wishes may have a strong bearing on the ultimate decision concerning custody. For example, a child may initiate a petition regarding the child's custody at age 16. FL, § 9-103. Similarly, an orphaned child of 14 may appoint the child's own guardian with approval of the court. Annotated Code of Maryland, Estates Trusts Article, § 13-702. In making custody decisions, courts generally give considerable weight to the wishes of a mature child unless it is clear that the child's decision would place the child in danger. See Newkirk v.Newkirk, 73 Md. App. 588, 595, 535 A.2d 947 (1988) (placing significant weight on the wishes of the 13 and 15 year old children to live with their adult half-brother rather than their father).
[13] Under Maryland law, the offense of hindering consists of the following elements: (1) the officer is engaged in lawful duty, (2) an act or omission of the defendant hinders the officer's performance of that duty; (3) the defendant was aware of officer's duty, and (4) the defendant intended to interfere.Davis v. DiPino, 354 Md. 18, 729 A.2d 354, 362 (1999); seealso Cover v. State, 297 Md. 398, 466 A.2d 1276 (1983).
[14] There may be procedural and substantive issues associated with making such a change to the order. For example, the domestic violence law directs that a protective order be served upon the parties and, among others, "any affected person eligible for relief" and "any other person the court determines is appropriate." FL, § 4-506(f). By contrast, the statute only directs that a temporary ex parte order be served on "the alleged abuser." FL, § 4-505(b). In any event, we offer this suggestion to highlight the distinction between using force against the individual subject to the protective order and using force against a third party. Cf. FL, § 9-210 (requiring joinder of a third party with physical custody of a child subject to custody litigation). An amendment of the domestic violence law might also address issues relating to a third party custodian who is not otherwise a party to the action.
[15] In a recent decision, the Court of Appeals discussed these potential claims in some detail and the immunities available to municipal police officers. DiPino v. Davis, 354 Md. 18,729 A.2d 354, 367-73 (1999).
[16] In the parlance of § 1983, an officer is a "person" subject to suit for damages. The State, and State officials sued in an "official capacity," are not persons subject to suit for monetary damages under § 1983. By contrast, a local government is a "person" under that statute and is therefore susceptible to such claims. Ritchie v. Donnelly, 324 Md. 344, 355-57,597 A.2d 432 (1991).
[17] Under the LGTCA, a local government entity is liable, up to certain limits, for its own tortious conduct and for compensatory damages assessed against its employees for tortious conduct committed within the scope of employment. CJ, § 5-302(b), 5-303(b); DiPino v. Davis, 729 A.2d at 370.
 *Page 127