730 A.2d 274

Siamak A. HAMZAVI

v.

Marc BOWEN, et ux.

No. 896, Sept. Term, 1998.

Court of Special Appeals of Maryland.

May 27, 1999.

Raymond D. Burke (David Freishtat and Freishtat & Sandler, on brief), Baltimore, for appellant.

Courtland K. Townsend, Jr., Ocean City (Michael O. Connaughton and Blumenthal, Delavan & Williams, P.A., Annapolis, on brief for receiver), for appellees.

Argued before DAVIS, EYLER and SONNER, JJ.

SONNER, Judge.

This case arises out of a lawsuit filed by the owners of a condominium unit in the Carousel Hotel located in Ocean City, Maryland. The dispute has a tortured history that began in June of 1995, when Dr. Siamak Hamzavi, a cardiac surgeon from Scranton, Pennsylvania, through his wholly owned limited partnership, Four Star Enterprises, bought the Carousel Hotel and many of the condominium units located within the hotel complex. The condominium owners manage the condominium units through the Council of Unit Owners of Carousel Center Condominium, Inc. ("the council"). After purchasing the hotel on September 12, 1996, Dr. Hamzavi used his voting power from ownership of multiple condominium units located in the Carousel Hotel to dismiss the council's preexisting board of directors and substitute one completely controlled by

him. Although the named appellant in this appeal is Dr. Hamzavi, the disputes have centered around the activities of not only Dr. Hamzavi, but also the board of directors, which has indisputably been working on his behalf. There have been other related suits involving the Carousel Hotel and the condominium owners that have complicated and affected the management and financial health of the hotel, but relating them is not necessary to the resolution of the issues before this Court.

It is also unnecessary to recite here all the history of the many financial problems that the Carousel Hotel is experiencing that has led to a lapsing of insurance coverage and the imminent threat by the town of Ocean City to close the Carousel Hotel. Suffice it to say that the accumulating financial problems led to the filing of a complaint against the council in the Circuit Court for Worcester County and eventually to this appeal. The allegations of the condominium owners were, in effect, that Dr. Hamzavi, through his control of the council, was operating the Carousel Hotel in violation of the Maryland Condominium Act and in a manner that endangered their investments, was attempting to enforce payment of illegal assessments, had adopted a budget that was not in the interests of the condominium owners, and was conspiring to devalue the price of the condominium units so that he could purchase them below market value. The condominium unit owners were facing a council totally controlled by Dr. Hamzavi, one that filed suit against them to collect dues, and at the same time refused to collect dues or assessments from Dr. Hamzavi.

After several hearings on motions filed in the case, the court below entered a consent order appointing a trustee to protect the interests of the 160 individual condominium owners. For several months, the trustee, a local CPA, attempted to manage the financial affairs of the condominium, but he was repeatedly frustrated by a complete lack of cooperation from Dr. Hamzavi and his agents. The dispute between the unit owners of the condominiums and Dr. Hamzavi reached a critical point when Dr. Hamzavi, without notifying the trustee or anyone else,

filed for bankruptcy under Chapter 11 of United States Bank-ruptcy Code. The bankruptcy court dismissed the case and stated that "[t]he purpose of this filing is not to adjust or reorganize the financial relationships between the debtor and its creditors. Rather, the purpose of this filing is to collect condominium assessments as determined by the debtor, with the debtor in control." The court found further that Dr. Hamzavi was seeking to promote the interests of the hotel in conflict with the interests of the condominium unit owners, and that the best means of bringing order out of the chaos created by Dr. Hamzavi was to "abstain in favor of" the circuit court. Subsequently, the circuit court held a hearing and came to the conclusion that the instrumentality of a trustee was not working, and decided, instead, to appoint a receiver who would assume complete authority over the incorporated council of unit owners of the Carousel Hotel, and who would manage its affairs and operations. It is from that order that this appeal was taken. The issues, as framed by appellant, are:

I. Did the trial court possess the authority to create a receivership?

II. Was the court's appointment of a receiver supported by sufficient evidence?

III. Did the trial court have the authority to strike the appearance of appellant's counsel?

For the reasons discussed below, we find in favor of appellee on all issues.

We first address appellant's contention that the trial court lacked the authority to appoint a receiver. Specifically, appel-lant argues that Maryland courts do not possess the inherent power to create receiverships; rather, the establishment of a receivership must be made pursuant to a statutory provision, which expressly authorizes the appointment of a receiver.

 Generally, a court of law without equity jurisdiction or statutory authority has no power to appoint a receiver. 65 AM.JUR.2D *Receivers* § 15 (1972). A court of equity, however, by virtue of its chancery jurisdiction, possesses ample authori-

ty to create receiverships, independent of statute, provided that the proper grounds and conditions exist for the appointment of a receiver. *Id.* "[I]t is text-book law 'that the appointment of a receiver over a corporation is generally equivalent to a suspension of its corporate functions, and of all authority over its property and effects, and is also equivalent to an injunction restraining its agents and officers from intermeddling with its property.'" *Linville v. Hadden & Co.*, 88 Md. 594, 596, 41 A. 1097 (1898) (quoting *High on Receivers*, Sec. 290). Section 1–501 of the Maryland Courts and Judicial Proceedings Article establishes unequivocally that Maryland circuit courts exercise full equity jurisdiction. *See also Wentzel v. Montgomery General Hospital, Inc.*, 293 Md. 685, 701, 447 A.2d 1244 (1982). Section 1–501 provides as follows:

> The circuit courts are the highest common-law and equity courts of record exercising original jurisdiction within the State. Each has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by law, except where by law jurisdiction has been limited or conferred exclusively upon another tribunal.

MD.CODE ANN., Cts. & Jud. Proc. § 1–501 (1998).

■ As the highest court of original jurisdiction in Worcester County, the circuit court was empowered with full equity jurisdiction. It is abundantly clear, therefore, that the circuit court possessed ample authority to appoint a receiver to preserve and manage the property at issue.

Having determined that the court had the power to create a receivership, we next address the issue of whether the record contains sufficient evidence to support the court's appointment of a receiver.

■ The appointment of a receiver "is an extraordinary remedy, which should be granted with great care." *First Union Savings & Loan, Inc. v. Bottom*, 232 Md. 292, 296, 193 A.2d 49 (1963). Consequently, "if it does not clearly appear that there is fraud, spoliation, or imminent danger of the loss

of the property unless immediate possession is taken by the court, a receivership should not be ordered." *Brown v. Brown*, 204 Md. 197, 211, 103 A.2d 856 (1954). A court should not appoint a receiver on anticipated grounds. 65 AM.JUR.2D, *supra*, § 27. Rather, there must be an "imminent danger of the property being lost, injured, diminished in value, destroyed, squandered, wasted, or removed from the jurisdiction." *Id.*

■ Bearing these legal principles in mind, we turn now to the facts of the dispute before us. The record reveals that Dr. Hamzavi owes millions of dollars in unpaid dues and assessments, and that the council's board of directors, over which he possessed total control, refused to initiate lien proceedings against him to collect the owed funds. As the trial court observed, as long as Dr. Hamzavi and his agents remained in control of the Carousel Hotel, there would never be a lien filed against Dr. Hamzavi for the unpaid dues. To make matters worse, the Carousel Hotel was on the brink of insolvency and in imminent danger of closure by the Town of Ocean City for failing to comply with a consent order to repair various housing violations. In short, Dr. Hamzavi and his hand-picked board had brought the Carousel Hotel to the point of financial and operational gridlock. The circuit court was well within its discretion in appointing a receiver to administer the affairs of the Carousel Hotel.

■ Dr. Hamzavi next contends that the court exceeded its authority in striking the appearance of the council's attorney. In doing so, according to Dr. Hamzavi, the court effectively deprived the council of its right to legal representation.

■ Our review of the court's order, however, fails to substantiate Dr. Hamzavi's claims. After striking the appearance of the council's attorney, the court ordered that " ... no attorney other than Courtland K. Townsend, Jr., Esquire is authorized to represent the Council of Unit Owners of Carousel Center Condominium, Inc. in any legal proceeding **unless first authorized by this Court or any Appellate Court** .... " (emphasis added). Hence, it is apparent that the court did not

deprive the council of legal representation; rather, it simply held that any attorney chosen by the council would first have to obtain court approval. In light of the court's specific finding that the council's former attorney had breached his fiduciary duty to the council by orchestrating a bankruptcy whose sole purpose was to derail and frustrate the trustee, we hold that the court's order was justified.

**JUDGMENT AFFIRMED;**

**COSTS TO BE PAID BY APPELLANT.**