752 A.2d 1272

FOUR STAR ENTERPRISES LTD. PARTNERSHIP et al.

v.

COUNCIL OF UNIT OWNERS OF CAROUSEL
CENTER CONDOMINIUM, INC.

No. 1699, Sept. Term, 1999.

Court of Special Appeals of Maryland.

June 7, 2000.

552

Raymond Daniel Burke (Freishtat & Sandler, on the brief), Baltimore, for Appellants.

Courtland K. Townsend, Jr., Ocean City, for Appellee.

Argued before THIEME, KRAUSER and THEODORE G. BLOOM (Retired, specially assigned), JJ.

THIEME, Judge.

The appeal before us is the confluence of three disparate but interconnected streams, and rests on appellants' hyper-technical reading of the law. This reading is intended to give actuality to appellants' apparition that their hotel and condo-minium units were wrongfully wrested from them. This Court, however, is not beguiled by legal smoke and mirrors.

We shall address three appeals consolidated by order of this Court on motion of appellants, Four Star Enterprises Limited Partnership ("Four Star") and others, with the consent and joint request of appellee, the Council of Unit Owners of Carousel Center Condominium, Inc. ("Council"). The appeals are from orders entered in the Circuit Court for Worcester County in three closely related cases:

1. A Memorandum Order of August 3, 1999, denying ap-pellant Four Star's objections to ratification of the fore-closure sale of the Carousel Hotel in Ocean City and reaffirming its Final Order of Ratification, which was entered in Case No. 23–C–99–230, formerly in this Court as No. 1701, September Term, 1999;

2. An Order dated August 3, 1999, denying appellant Four Star's objections to ratification of the foreclosure sale of 22 condominium units and reaffirming its Final Order of Ratification, which was entered in Case 23–C–99–324, No. 1699, September Term, 1999; and

3. An Order of August 9, 1999, granting appellee's Motion for Ancillary Relief in Aid of Enforcement of a Judgment, which was entered in Case No. 97CV0458, formerly in this Court as No. 1700, September Term, 1999.

Appellants raise the following questions:

1. Did the court below err when it ratified the foreclosure sale of the Carousel Hotel and 22 units of the Carousel Center Condominium without a hearing?

2. Did the court below err when it enforced a judgment allowing the receiver to exercise his full powers without an additional hearing?

We answer, "No," and affirm the orders of the court below.

## Facts

The instant appeal depicts but the latest subdivision and visit to this Court of counsel's Byzantine procedural praxis involving the Carousel Hotel and condominium complex in Ocean City. Appellants—Four Star, a limited partnership; Carousel Hotel & Resort, Inc. ("CH & R"), its general partner; and Dr. Siamak Hamzavi, the sole owner of the two [1]— owned and operated the hotel and 22 units in the adjoining condominium, which were used as short-term rentals. The human face of appellee is James R. Bergey, Jr., who is the court appointed receiver for the Council. The history of the order appointing Bergey, which we affirmed last year, *see Hamzavi v. Bowen*, 126 Md.App. 492, 730 A.2d 274 (1999), comprises an earlier subdivision of the instant case. That opinion contains an effusion of facts setting forth appellants' fraudulent activities toward the Council during the time they owned and operated the hotel and rentals.[2]

---

[1]. Hamzavi is the sole limited partner in Four Star. CH & G is the sole general partner in Four Star, and Hamzavi is the sole shareholder of CH & G.

[2]. Hamzavi's purchase of the 22 units in June 1995 gave him control of the Council, which managed the affairs of the condominium complex. He dismissed its pre-existing board of directors and substituted a board that he could control. A series of precipitous and corrupt decisions by

The foreclosure sales appealed here were based on orders imposing liens under the Maryland Contract Lien Act, Md. Code (1974, 1996 Repl.Vol., 1999 Cum.Supp.), § 14–201 *et seq.* of the Real Property Article. This Court affirmed those orders in an unpublished opinion, *Four Star Enter. Ltd. Partnership v. Council of Unit Owners of Carousel Center Condo., Inc.*, No. 6579, Sept. Term 1998 (Md.Ct.Spec.App. Nov. 23, 1999), *cert. denied*, 358 Md. 163, 747 A.2d 645 (2000), which deals in exhaustive detail with some issues raised by appellants here.

## A

### The Foreclosures

The first two orders on appeal involve foreclosure sales for the hotel and condominium properties of Hamzavi and his wholly-owned corporation and limited partnership. On February 22, 1999, the receiver filed a Complaint to Foreclose Lien against owner Four Star Enterprises Limited Partnership, seeking to foreclose on a lien entered against its ownership interest in the Carousel Hotel. *See Council of Unit Owners of Carousel Center Condo., Inc. v. Four Star Enter. Ltd. Partnership*, No. 23–C–99–000230 (Worcester County Ct. filed Feb. 22, 1999). On March 15, he filed a Complaint to Fore-

---

Hamzavi and his hand-picked board jeopardized the safety and financial health of the hotel, leading to several lawsuits, including this one. *See Hamzavi*, 126 Md.App. at 494–96, 730 A.2d 274. The condominium unit owners who eventually sued, *see Bowen v. Council of Unit Owners of the Carousel Center Condo., Inc.*, No. 97CV0458 (Worcester County Cir. Ct. filed Apr. 4, 1997), accused Hamzavi of "operating the Carousel Hotel in violation of the Maryland Condominium Act and in a manner that endangered their investments . . . attempting to enforce payment of illegal assessments . . . adopt[ing] a budget that was not in the interests of the condominium owners, and . . . conspiring to devalue the price of the condominium units so that he could purchase them below market value." 126 Md.App. at 495, 730 A.2d 274. In August 1997, the trial court appointed Bergey, a local accountant, as trustee, to protect the interests of other unit owners. Appellant Hamzavi and his agents repeatedly thwarted Bergey's activities. After Hamzavi filed for Chapter 11 bankruptcy, an action dismissed as improper by the Bankruptcy Court, the circuit court then appointed Bergey as receiver. *Id.* at 496, 730 A.2d 274.

close Lien against owners Hamzavi and CH & R, seeking to foreclose on liens entered against the 22 units. *See Council of Unit Owners of Carousel Center Condo., Inc. v. Hamzavi,* No. 23–C–99–000324 (Worcester County Ct. filed Mar. 15, 1999). These liens, in the amount of $2,308,607.63 for the hotel and $715,437.16 for the units, were imposed in January 1999 because Hamzavi had failed to pay condominium fees from July 12, 1995, through December 31, 1998; a special assessment for the period of September 1 through December 31, 1998; and a fire safety assessment for his units. *See Four Star,* slip op. at 3–5.

On February 22, the court below ordered the sale of the hotel, appointing the receiver's attorney as trustee to conduct the sale. Subsequently, on March 11, Four Star (but not Hamzavi or CH & R) filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code, commencing proceedings in the United States Bankruptcy Court for the District of Maryland. *In re Four Star Enter. Ltd. Partnership,* No. 95–5–3200–ESD (Bankr.D. Md. filed Mar. 11, 1999). Under the Bankruptcy Code, this filing brought into play an automatic stay of further State court proceedings related to the hotel, which was owned by Four Star.[3]

On March 17, the court below ordered the sale of the condominium units, again appointing the receiver's attorney as trustee. Because the receiver thought it was economically unworkable to sell the units without also selling the hotel, as any viable buyer would likely want both, foreclosure was postponed until the lifting of the stay. Appellants also filed in Bankruptcy Court what they described as a preference action, contending that Hamzavi only maintained bare legal title to the units for the benefit of Four Star. This action, we note, would have allowed Hamzavi to benefit personally from the bankruptcy proceedings without filing for bankruptcy.

---

**3.** Hamzavi and CH & R owned the condominium units, and they were not in bankruptcy proceedings.

Four Star sought to extend the automatic stay by filing a complaint for that purpose with the Bankruptcy Court on April 7. It argued, relying on 11 U.S.C. § 547 (1994 & Supp. 1995), that the liens that the receiver sought to foreclose were actually preferences. In response, the Bankruptcy Court entered on April 14 an Order Conditioning the Automatic Stay, which allowed Four Star to retain its stay on the sale of the hotel if it posted a bond of $302,288. The Bankruptcy Court ordered the stay to be lifted without further court proceedings if Four Star failed to post the bond within 15 days and the receiver attested thereto in an affidavit. Four Star failed to post any bond, but before the receiver could file an Affidavit of Default, Four Star requested and got an emergency hearing on May 6. At the hearing, the Bankruptcy Court found Four Star's commitment letter for the payment to be insufficient, and it denied the partnership's Emergency Motion to Stay the Effectiveness of the Order Conditioning the Automatic Stay. Foreclosure proceedings recommenced in the court below, and the hotel and condominium properties were sold at public auction on May 28, taking them out of the control of the Bankruptcy Court.[4] The receiver, Bergey, made the highest bid.

The receiver also filed the Affidavit of Default on May 28, as well as reported to the court below that the properties had been sold. The Bankruptcy Court denied as moot appellants' last-ditch effort to stop the sale, their Emergency Motion to Reinstate the Automatic Stay on May 28. The Bankruptcy Judge noted that, but for the apparent "technical defect" that no Affidavit of Default had been filed, he would have not looked kindly upon the motion. He also observed that Four Star had failed to meet filing deadlines and to pay the $302,288 bond required by the court. He noted that Four Star was trying to extend the automatic stay to the foreclosure of the condominium units, which were not titled in its

---

4. In a subsequent order dated October 15, we note, the Bankruptcy Court made it clear that the hotel was no longer part of the bankruptcy estate.

name and thus not part of the bankruptcy estate, and that it had offered no evidence to support the position that the units should be included.

The court below ratified the sale of the hotel and 22 condominium units on June 29. On June 28, unbeknown to the circuit court, appellants had tried under 28 U.S.C. § 1452(a)[5] to remove the foreclosure actions to federal court and filed there a motion objecting to the ratification of the sale of the hotel and units. *See Council of Unit Owners of Carousel Center Condominium, Inc. v. Four Star Enter. Ltd. Partnership,* No. S–99–1915 (D. Md. filed June 28, 1999); *Council of Unit Owners of Carousel Center Condominium, Inc. v. Hamzavi,* No. S–99–1916 (D. Md. filed June 28, 1999). The removal notices were not docketed in federal court until after June 29th, the date that the sales had been ratified in the circuit court. No exceptions or objections, moreover, were filed in circuit court, although Four Star moved in the federal court on July 14 to strike the Final Orders of Ratification.

On July 22, the United States District Court remanded the foreclosure of both the hotel and the 22 units back to the circuit court. Acknowledging that it could exercise jurisdiction, it nonetheless practiced "discretionary abstention" and sent back to state court "all motions that remain open in these cases, whether they were filed before or after removal." After considering motions from both sides, the circuit court on August 3 denied appellants' objections and reaffirmed its Final Orders of Ratification dated June 29, 1999. We note that the court below specifically found that Four Star was "neither a party nor a holder of a subordinate interest" in the condominium units and thus was "not a proper party to file exceptions"

---

5. This section states:

A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.
28 U.S.C. § 1452(a) (1994).

in the proceeding regarding those units. The court below denied a Motion For Reconsideration Of And To Vacate Memorandum Order in each of the foreclosure proceedings on August 26.

## B

### The Enforcement Order

The third order on appeal grants the receiver's Motion for Ancillary Relief to enforce the provisions of a judgment under Maryland Rule 2–648.[6] The Order provided aid of enforcement for the Order of April 3, 1998, which appointed Bergey as receiver. The court acted on the basis of exhibits, including a detailed affidavit of the receiver's property manager that documented risks to the premises and to the health and safety of its occupants under the tenure of Hamzavi's resident staff. The affidavit described an ongoing pattern of conduct by Hamzavi's employees to prevent access to the hotel or condominium premises, which threatened the receiver's efforts to protect the property. This conduct included the failure of hotel personnel to deal with several small fires and other emergencies; the staffing of security functions, if at all, with unqualified persons; and the removal of large quantities of cash from the hotel by appellants' employees.

The enforcement order was signed without a hearing on August 9, 1999, and it was served on Hamzavi's resident staff by four Worcester County Sheriff's deputies, who evicted those persons from the premises. The court below appointed a professional management team, identified in exhibits accompanying the receiver's motion, to manage the property from the time the resident staff was evicted. With the eviction, the

---

**6.** Rule 2–648 allows the court to enforce provisions of a judgment by the seizure or sequestration of property. Rule 2–648(a) states in relevant part:

> When a person fails to comply with a judgment prohibiting or mandating action, the court may order the seizure or sequestration of property of the noncomplying person to the extent necessary to compel compliance with the judgment. . . .

receiver was for the first time able to gain access to the properties to view their condition. On September 2, the court below denied a Motion to Dissolve the Order Entered on August 9, 1999, and appellants filed Notices of Appeal with this Court. The three appeals were consolidated by this Court on October 6.

## Discussion

██ We note at the outset that the orders in question were discretionary rulings by the trial court, and they can be set aside only if they were an abuse of discretion. Further, the grant or denial of a post-trial motion is within the sound discretion of the trial court, and it likewise can be set aside only in cases of clear error. *See Weaver v. Realty Growth Investors,* 38 Md.App. 78, 82, 379 A.2d 193 (1977) ("The revisory power ... over unenrolled judgments is to be liberally exercised 'lest technicality triumph over justice.' ") (quoting *Hamilton v. Hamilton,* 242 Md. 240, 218 A.2d 684, *cert. denied,* 385 U.S. 924, 87 S.Ct. 239, 17 L.Ed.2d 147 (1966)); *Cromwell v. Ripley,* 11 Md.App. 173, 273 A.2d 218 (1971) (" 'After the judgment properly was entered, the question of whether it should or should not be vacated in whole or in part was within the sound discretion of the trial court ....' ") (quoting *Clarke Baridon, Inc. v. Union Asbestos & Rubber Co.,* 218 Md. 480, 483, 147 A.2d 221 (1958)).

I

### The Foreclosures

The first two orders on appeal ratified *ex parte* the foreclosure sale of the hotel and 22 condominium units. Appellants argue that the sale violated the automatic stay arising from the concurrent bankruptcy proceedings for Four Star; that a hearing should have been held to receive evidence on their objections to the sale; and that the court below should have set aside the foreclosure sale because the trustee could not convey marketable title. We address each of these arguments in turn.

## A

### The Automatic Stay

Four Star filed a Voluntary Petition to institute Chapter 11 bankruptcy proceedings on March 11, 1999. Under the Bankruptcy Code, 11 U.S.C. § 362(a) (1994 & Supp.1999), filing a petition stays:

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the [bankruptcy] case....

Appellants maintain that all foreclosed properties were part of the bankruptcy estate and that the automatic stay still applied to the hotel and condominium units at the point when they were sold. They are wrong on both accounts.

■ Without a doubt, the hotel was part of the bankruptcy estate, because Four Star, the bankrupt party, was the owner of record. Four Star argues, however, that it was also the beneficial owner of the condominium units because Hamzavi

has maintained only bare legal title to the 22 Units, with all beneficial interest being preserved for the benefit of Four Star; that all income derived from the rental of the 22 Units was paid to Four Star and treated as part of the operation of the Hotel; that all expenses relating to the 22 Units were treated as expenses of the Hotel; that all tax attributes associated with the 22 Units were treated as those of Four Star; and that the 22 Units were made available to customers for rental as rooms of the Hotel.

Four Star concludes that its beneficial ownership of the condominium units means that those units were also under the automatic stay.

We find no direct authority in bankruptcy law, and those cases touching on the issues in this case tend to not support appellants. In *In re Geris*, 973 F.2d 318 (4 th Cir.1992), for example, the Fourth Circuit held that the automatic stay does not prevent foreclosure when the real estate in question is not actually owned by the debtor, even if the debtor is liable for the underlying indebtedness as guarantor or co-maker of a note:

> Certainly Geris has an interest, and a material one, in having the value of the Manassas property maximized, insofar as it bears directly on the size of the deficiency for which he may be obligated to Peoples National Bank. But if we were to accept this interest as sufficient to invoke in Saratoga's favor the automatic stay provision of 11 U.S.C. § 362(a), we would be cutting off foreclosure rights of secured creditors in any property standing as security for a debt that happened to be guaranteed by a bankrupt. This cannot have been an intended function of the automatic stay provision. . . .

*Id.* at 321; *accord GATX Aircraft Corp. v. M/V Courtney Leigh,* 768 F.2d 711 (5 th Cir.1985) (automatic stay intended to protect assets of debtor, not those of co-debtors); *Otoe County Nat'l Bank v. W & P Trucking Inc.,* 754 F.2d 881 (10 th Cir.1985) (same).

■ Even if the automatic stay did apply to the condominium units, we find considerable support in the record to show that the stay had been lifted by the time the sale was made final by ratification. Appellants argue that the sale was improper because the receiver had not yet filed an Affidavit of Default with the Bankruptcy Court before the auction took place,[7] but we think they chase chimeras.

■ First, and most important in our view, the foreclosure sale was not *final* until June 29, when it was ratified by the court below. It has long been the rule in Maryland that foreclosure sales are not final prior to court approval:

---

7. The auction occurred at 10:00 a.m. on May 28, whereas the Affidavit of Default was filed at 12:01 p.m. that day.

A sale under a decree does not pass the title, unless it is ratified and confirmed. The court is the vendor, acting through its agent, the trustee who has been appointed to make the sale. He reports to the court the offer of the bidder for the property. If the offer is accepted, the sale is ratified, and thereupon, and not sooner, the contract of sale becomes complete.

*Hanover Fire Ins. Co. v. Brown,* 77 Md. 64, 71, 25 A. 989, *reh'g denied,* 77 Md. 64, 27 A. 314 (1893); *accord Plaza Corp. v. Alban Tractor Co.,* 219 Md. 570, 578, 151 A.2d 170 (1959) ("Before ratification the transaction was merely an offer to purchase which had not been accepted.... But, when the offers were accepted and the sales to the respective bidders were ratified and confirmed (and the purchase money paid), the contracts of sale became complete and the title to the property sold passed."). Here, ratification—and finality—occurred over a month *after* the Affidavit of Default was filed with the Bankruptcy Court. At most, the trustee's advertising and the auction itself were mere preparation for eventual foreclosure and not foreclosure proper.[8]

Second, even if the auctioneer's cry of "sold" had been a proper indicium of finality, the importance of the affidavit had

---

8. Appellants argue that any action toward foreclosure—such as advertising—violated the automatic stay. To be sure, the cases show that creditors in Bankruptcy Court must walk a fine line while the stay is in effect. *See, e.g., Barnett Bank of Southeast Ga. v. Trust Co. Bank of Southeast Ga. (In re Ring),* 178 B.R. 570, 574 (Bankr.S.D.Ga.1995) ("Advertising for foreclosure is clearly the sort of creditor action that is stayed by sections 362(a)(1), (3), (4), and (5)."). Although *Ring* gives us slight reason for pause, it is distinguishable from the instant case in that, at the time of the foreclosure sale, the Bankruptcy Court had not conditioned the automatic stay on any actions by debtor, as it did here.

Not all actions in preparation for foreclosure, moreover, violate an automatic stay. For example, advertising the postponement and new date of a foreclosure sale does not violate the stay because *it does not change the composition of the bankruptcy estate. See, e.g., First Nat'l Bank of Anchorage v. Roach (In re Roach),* 660 F.2d 1316, 1318–19 (9th Cir.1981) ("The purpose of the automatic stay is to give the debtor a breathing spell from his creditors.... The automatic stay also prevents piecemeal diminution of the debtor's estate. The automatic stay does not necessarily prevent all activity outside the bankruptcy forum....

diminished significantly in light of other procedural events that occurred. The Bankruptcy Court clearly intended for the receiver's filing of an Affidavit of Default to eliminate the need for further hearings on the stay should Four Star fail to post a bond of $302,228 or comparable security by April 29.[9] Had Four Star posted this bond, the automatic stay would have remained intact, and no foreclosure sale could have taken place. Four Star, however, not only defaulted, but it also requested and received an emergency hearing on May 6, a week after the deadline. At this hearing, the Bankruptcy Court confirmed that default had taken place. According to the court, the commitment letter Four Star had obtained in lieu of a cash bond was inadequate to justify staying the effectiveness of the Order Conditioning the Automatic Stay issued on April 14. Although the stay remained in place on the morning of May 28, the absence of the affidavit was, as the Bankruptcy Court pointed out, a mere technical defect stand-

---

Here, the Bank merely maintained the status quo ....") (citations omitted); *accord Washington Mutual v. Fritz (In re Fritz)*, 225 B.R. 218 (E.D.Wash.1997). At any rate, whether the advertising here violated the automatic stay is a question best posed to the federal court and not this Court, and we need not answer it to determine when the sale took place.

9. The Order Conditioning The Automatic Stay, entered by the Bankruptcy Court on April 14, states:

 ORDERED, that if the condition of the preceding paragraphs is not satisfied, the automatic stay is lifted, *without further action by the court*, upon the filing of an affidavit of such default. . . .

Such orders, which are relatively common in Bankruptcy Court, are intended to give creditors rapid remedies should debtors fail to reorganize their finances with appropriate haste. *See, e.g., In re PAVCO Enter.*, 172 B.R. 114, 119 (Bankr.M.D.Fla.1994) ("In the event the Debtors fails [*sic*] to furnish adequate protection as outlined above, the Landlord shall be entitled to file an affidavit of default, serve telephonic notice on the Debtor and unless, within 48 hours, the Debtor cures the default or requests a hearing by showing acceptable evidence, this Court will enter an order lifting the automatic stay."); *In re Van Beck Metal Prods., Inc.*, 129 B.R. 268, 269 (Bankr.M.D.Fla.1991) ("in the event the Debtor defaults or fails to comply with the conditions imposed by the Order, Amada would be entitled to apply for an ex parte order lifting the automatic stay after having given 48 hours telephonic notice to the Debtor's attorney and filing an affidavit of default with the Court.").

ing in the way of the foreclosure action—one that was eliminated before the sale was final.[10]

Third, once the stay had been lifted, Four Star made no efforts *in the proper court* to appeal its lifting or stay the foreclosure sale. *See Mann v. Alexander Dawson, Inc.*, 907 F.2d 923 (9 th Cir.1990) (where debtor neither appealed the lifting of the automatic stay nor obtained a stay of a foreclosure sale, he could not later complain about the foreclosure of his property). Rather than appealing the lifting of the stay through the federal courts or filing exceptions to the sale in State court within 30 days of the auction,[11] Four Star instead sought to remove the foreclosure actions to federal court. The United States District Court remanded these actions to the circuit court, reminding Four Star that "[f]oreclosure sales are prototypically State law bound proceedings." In our view, Four Star sought to do by procedural sleight of hand—or in the words of the United States District Judge, by dancing "an almost Dickensian procedural minuet"—that which it could not do on the merits. By not posting adequate security, it squandered its only prospect of keeping the stay in place, and we think it now exalts form over substance when it argues that a mere technical defect renders the foreclosure sale invalid.

## B

### Evidentiary Hearing

■ Appellants also argue, based on their reading of Maryland Rule 14–305(d)(2), that the court below should have held

---

**10.** In his Memorandum and Order Denying Emergency Motion to Reinstate Automatic Stay, the Bankruptcy Judge later explained that the automatic stay had not been lifted as of May 28; nevertheless, the failure to file an affidavit of default was a mere "technical defect."

**11.** Md. Rule 14–305(d)(1), which governs the filing of exceptions to a foreclosure sale, states:

A party, and, in an action to foreclose a lien, the holder of a subordinate interest in the property subject to the lien, may file exceptions to the sale. Exceptions shall be in writing, shall set forth the alleged irregularity with particularity, and shall be filed within 30 days after the date of a notice issued pursuant to section (c) of this Rule or the filing of the report of sale if no notice is issued....

an evidentiary hearing on their objections to the foreclosure sale. Rule 14–305(d)(2) states:

> The court shall determine whether to hold a hearing on the exceptions but it may not set aside a sale without a hearing. The court shall hold a hearing if a hearing is requested and the exceptions or any response clearly show a need to take evidence. . . .

Appellants' objections are four-fold. First, they complain that the circuit court failed to address the alleged violation of the automatic stay. Issues pertaining to the violation of the stay, they assert, were within the circuit court's bailiwick, because "the United States District Court expressly found that the local court could competently apply 'federal law dealing with bankruptcy stays,' and specifically stated that it was leaving 'for adjudication in the state court all motions that remained opened [*sic*] in these cases.'" Second, they maintain that the circuit court erroneously refused to rule on how the foreclosure sale affected the preference issues, again acting "directly contrary to the remand of 'all motions that remain open.'" Third, they contend that the circuit court incorrectly refused to consider on the basis of standing Four Star's objections to the foreclosure sale of the 22 units. The court below found that Four Star lacked standing to object to the sale of the units, even though they had historically been used as part of the hotel. Fourth, Four Star claims that the court failed to consider its objections to selling the hotel and condominium units as a package, and such packaging eliminated potential condominium buyers from participation.

In general, we find appellants' argument to be illusory. A hearing is by no means mandatory under Rule 14–305(d)(2), even if one of the parties requests it. Because this rule is written in conjunctive form, authorizing a proceeding "if a hearing is requested *and* the exceptions or any response clearly show a need to take evidence," it gives the court discretion. We hold that the court below did not abuse this discretion by declining to hold a hearing after finding, in its Memorandum Order of August 3, that Four Star had not established the necessity to take evidence. First, no hearing

was requested—at least in the court below. The docket for each foreclosure action shows that appellants filed *no* exceptions to the foreclosure sale and, under Md. Rule 14–305(d)(1), the proper place to raise any of the four objections appellants now raise would have been in an exceptions motion. Instead, appellants adjusted their sights on federal court and sought to remove the State court proceedings to the District of Maryland.

With regard to their first two objections, moreover, appellants misread the opinion of the United States District Court remanding all open motions to the State court. They conclude that *all* aspects of this labyrinth, including the issues inherent to the bankruptcy case, belong in Maryland State courts. They are wrong. The federal District Court merely remanded those issues that directly affected the foreclosure sale, which is a "prototypically State law bound proceeding[ ]." Although the District Court acknowledged that the circuit court might veer onto territory best known to bankruptcy judges, it took into account "considerations of comity, forum shopping, and the local nature of ... proceedings." In the same spirit of comity, the circuit court appropriately applied bankruptcy law only as it colored the State law issues. *See W.D. Curran & Assoc. v. Cheng-Shum Enter., Inc.,* 107 Md.App. 373, 667 A.2d 1013 (1995) (examining the effect of the automatic stay on creditor's filing of a motion to extend writ of execution beyond the first 120–day extension to preserve its position). Furthermore, the remand here did not end the case in Bankruptcy Court. To the contrary, the bankruptcy proceedings continue, and those issues central to bankruptcy proceedings, including the existence of automatic stay and preference actions, will continue to be decided in Bankruptcy Court.

■ As for the third objection, we note again that Four Star was not the record owner of the condominium units, and we agree that it had no standing with respect to those units. Although the units and hotel may have shared the same management team, and Four Star may have been the beneficiary of the income generated by the units, it was not a proper

party to file exceptions to their sale. Maryland Rule 14–305(d)(1) requires that exceptions be filed by "[a] party, and, in an action to foreclose a lien, the holder of a subordinate interest in the property subject to the lien." In the foreclosure action for the units, Case No. 23–C–99–324, Siamak Hamzavi and CH & R qualify as parties, but not Four Star. In conclusion, appellants did too little too late and in the wrong court. They cannot credibly complain that the court below denied them a hearing on the foreclosure sale.

## C

### Marketable Title

■ Appellants also argue that the foreclosure sale should have been set aside because the trustee could not convey marketable title. Four Star's preference action in Bankruptcy Court, they argue, created a cloud on the title of the properties disposed of by the sale. If, however, the foreclosing party is also the purchaser of the property, as here, any such cloud on the title evaporates as to the trustee's legal and equitable right to sell, and the court would have no grounds to interfere with the sale. *See Baer v. Kahn,* 131 Md. 17, 26, 101 A. 596 (1917) (" 'In the exercise of the discretionary power thus conferred on the trustees, a court of equity has no right to interfere, provided it is honestly and reasonably exercised.' ") (quoting *Pole v. Pietsch & Thiede,* 61 Md. 570 (1883)). Although such a sale might later be appealed and that appellant would not be required to post a supersedeas bond, the simple fact of *lis pendens* in bankruptcy was not enough to prevent the receiver from further reselling the property, and thus, marketable title would have been conveyed.

*Creative Development Corp. v. Bond,* 34 Md.App. 279, 367 A.2d 566 (1976), *cert. denied,* 279 Md. 682 (1977), illustrates our point. In that case, the trustee under a deed of trust petitioned to foreclose property, claiming that the borrower had failed to pay real estate taxes when due. After the property was sold at public auction to the lender, the borrower filed exceptions to the sale's validity. To avoid the cost of

posting bond, as Maryland Rule 1017 generally required,[12] the borrower simply filed another suit, this one to enjoin the lender's resale of the property pending appeal. *Id.* at 280–82, 367 A.2d 566. We refused to honor his procedural bait-and-switch tactic, writing:

> It is much cheaper to file a law suit than to post a supersedeas bond in '... such sum as will secure the amount recovered for the use and detention of the property, interest, costs and damages for delay ...', Md. Rule 1018 b 2, but the suit will not take the place of the bond. If courts were to sanction the practice upon which Creative would have us place a judicial approbation, we would cast a tremendous financial burden upon lenders who would be placed in the position of having won their case and lost it at the same time. Without any type of protection, the lenders would be compelled to hold the property that was the subject of the foreclosure pending the outcome of an appeal, would be hesitant to make improvements to the property, and might sustain a huge loss of interest income.

*Id.* at 283, 367 A.2d 566. Likewise, we refuse to be seduced by Four Star's attempt to play State courts against federal courts. We affirm the orders of the trial court ratifying the foreclosure sale of the hotel and 22 condominium units.

## II

### The Enforcement Order

Finally, appellants argue that the court below should have held a hearing, or at least notified them, before entering the hotel and ejecting the management under the receiver's Motion for Ancillary Relief. Appellants' argument has four prongs. First, they contend that Maryland Rule 15–504, which governs temporary restraining orders, bound the proceeding from which this order issued, because the receiver's motion was granted "without an opportunity for a full adver-

---

12. The modern exceptions to the bond requirement are found in Maryland Rule 8–422.

sary hearing on the propriety of its issuance." *See* Md. Rule 15–501(c) (" 'Temporary restraining order' means an injunction granted without opportunity for a full adversary hearing on the propriety of its issuance."). In such case, they assert, the court erred because it did not require Bergey's attorneys to certify in writing "that specified efforts commensurate with the circumstances had been made to give notice" to appellants, *see* Md. Rule 15–504(b),[13] and the Order itself did not comply with the specific requirements of Maryland Rule 15–504(c) as to contents and duration.[14] Second, appellants aver that, in issuing the Order, the court below failed to place Maryland Rule 2–648, which governs the enforcement of judgments,[15] within the larger context of due process requirements. In Rule 2–648, appellants opine, "[t]here is nothing to suggest that [seizure or sequestration of property] may be done entirely *ex parte* and without opportunity to be heard," and "[i]t should ... have the same procedural requirements that are

---

13. Maryland Rule 15–504(b) states:

A temporary restraining order may be granted without written or oral notice only if the applicant or the applicant's attorney certifies to the court in writing, and the court finds, that specified efforts commensurate with the circumstances have been made to give notice. Before ruling, the judge may communicate informally with other parties and any other person against whom the order is sought or their attorneys.

14. Maryland Rule 15–504(c) states:

In addition to complying with Rule 15–502(c) [governing the form and scope of injunctions], the order shall (1) contain the date and hour of issuance; (2) define the harm that the court finds will result if the temporary restraining order does not issue; (3) state the basis for the court's finding that the harm will be irreparable; (4) state that a party or any person affected by the order may apply for a modification or dissolution of the order on two days' notice, or such shorter notice as the court may prescribe, to the party who obtained the order; and (5) set forth an expiration date, which shall be not later than ten days after issuance for a resident and not later than 35 days after issuance for a nonresident.

15. Maryland Rule 2–648(a) states in relevant part:

"When a person fails to comply with a judgment prohibiting or mandating action, the court may order the seizure or sequestration of property of the noncomplying person to the extent necessary to compel compliance with the judgment. . . ."

applicable to the issuance of an injunction. . . ." Third, appellants dispute whether there actually existed any friction or lack of cooperation between the hotel staff and Bergey and his staff. "By virtue of the Order of August 9, 1999 having been entered in an *ex parte* fashion," they claim, "the Circuit Court was deprived of any opportunity to consider evidence contrary to the assertions made on behalf of the Receiver." Maryland Rule 15–505(a), furthermore, demands "notice to all parties and an opportunity for a full adversary hearing on the propriety" of issuing a preliminary injunction. Fourth, appellants argue that the Order of August 9, 1999, was moot at issuance because the Council did not go to settlement within 20 days of ratification of the foreclosure sale, as the terms of sale required.[16] The receiver, they argue, is thus not yet the owner of the property. *See Werner v. Clark,* 108 Md. 627, 634–35, 71 A. 305 (1908) (if purchaser buying at foreclosure does not comply with the terms of sale, "the thing, which is the equivalent for the real estate sold, does not exist, and may never exist").

 Appellants again pursue a will-o'-the-wisp. As to their first and second contentions, the Order of August 9, 1999, was *not* an injunction and thus does *not* fall under Maryland Rule 15–501 *et seq.* To reach their conclusion, appellants reason, fallaciously, that if all injunctions are orders, then all orders must be injunctions. This is not true. Yet, on the basis of this errant syllogism, appellants further assume that the order on appeal is, like a temporary restraining order, valid for a limited period of time, because a "full adversary hearing" has not been held to give that order permanence. The receiver's motion under Maryland Rule 2–648, however, enforced the judgment that appointed him. The circuit court handed down that judgment after a full adversary

---

16. The advertised terms of sale state that "[t]he balance of the purchase price, together with interest at 10% per annum from the date of sale to the date of settlement, shall be paid in cash within twenty (20) days after final ratification of the sale by the Circuit Court for Worcester County, Maryland, time being of the essence with regard to the purchaser's obligations."

hearing with all parties present, and we affirmed it. *See Hamzavi v. Bowen,* 126 Md.App. at 492, 730 A.2d 274. That judgment authorized the receiver to "[f]ile such litigation as he believes is necessary to preserve, protect, or compensate the Estate, including, but not limited to, actions to compel payment of past, present, and future dues and assessments." Additionally, it "[prohibited] all persons, corporations, partnerships, and other entities . . . from interfering with the administration of [the Council] by the Receiver." In the circuit court's analysis, removing the existing management of the property was necessary to prevent interference, waste, and spoliation by appellants, and when we examine the affidavit attached to the receiver's Motion for Ancillary Relief, we find no error there. The court, moreover, later considered and denied a motion from appellant Four Star to dissolve the Order of August 9, 1999, and grant a hearing. Although Maryland Rule 2–648 by its silence does not prohibit a hearing from being held before a judgment is enforced, we find nothing in the rule or its interpreting cases to require such a hearing. Appellants here have received all the process they are due, and their argument fails.

As for appellants' third argument, we fail to see how the truncated affidavits submitted by appellants' hotel managers create any issues of material fact as to whether the order was necessary. Appellants' comptroller and general manager averred in these affidavits that no "friction, disagreement, or other lack of cooperation" with the receiver and his staff existed prior to the signing of the order. Their affidavits, however, parade mere generic denials that support appellants' solipsism. In contrast, the affidavit of the hotel's property manager, appointed by the receiver, cites several specific examples of incompetence and wrong-doing, many of which could be verified in the public record or by persons with no interest in the hotel and condominium properties.

Regarding their fourth and final argument, we note first that, contrary to appellants' assertion, the Council *is* the equitable owner of the properties in question. "When the sale

is finally ratified, the purchaser's inchoate equitable title, acquired at the time of the acceptance of his offer by the trustee, becomes complete and the purchaser's equitable title is established retroactively at the time of the original acceptance of the offer by the trustee." *Merryman v. Bremmer*, 250 Md. 1, 8, 241 A.2d 558 (1968). *Merryman* teaches, moreover, that the timing of the settlement process is subject to the terms of the sale as ratified by the court. *Id.* at 9–12, 241 A.2d 558. There, the court required purchasers who failed to settle according to the ratified terms of sale to pay the balance due and the taxes that had come due since the planned settlement date, together with interest calculated from the time that the trustees had paid them. *Id.* at 12, 241 A.2d 558; *see also* Md. Rule 14–305(g) ("If the purchaser defaults, the court, on application and after notice to the purchaser, may order a resale at the risk and expense of the purchaser or may take any other appropriate action.").

 In the instant case, settlement occurred after briefs were filed with this Court, effectively nullifying appellants' argument. We understand that a third-party purchaser has taken title to the property. Even if that were not the case, we note that the terms of sale as ratified gave the trustee great discretion regarding when and if to declare default:

If any successful bidder fails for any reason to complete settlement as provided above, the Deposit shall be forfeited and applied to the costs of the sale ... and the balance, if any, shall be delivered to the Council, to be applied by the Council against the indebtedness secured by, and other amounts due under, the Declaration and Bylaws of Carousel Center Condominium.... THERE SHALL BE NO RE-FUNDS....

After any such default and forfeiture, the Property may *at the discretion of the Trustee* be conveyed to the next highest bidder on the Property whose bid was acceptable to the Trustee. If instead the Property is resold, such re-sale shall be at the risk and the cost of the failing bidder....

To our knowledge, the property in question has been the subject of no less than five separate actions in Maryland and federal courts. The parties have appeared before this Court two times in as many years. We trust that, with the instant appeal resolved and the property in the hands of its new owner, the rosy-fingered dawn will now appear.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**