32 A.3d 149

**Elizabeth S. CAMPBELL**

v.

**COUNCIL OF UNIT OWNERS OF BAYSIDE CONDOMINIUM.**

No. 1187, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Dec. 1, 2011.

J. Donald Braden (Foster, Braden & Thompson, LLP, on the brief), Stevensville, MD, for Appellant.

John M. Oliveri, Annapolis, MD, for Appellee.

Panel: JAMES R. EYLER, WRIGHT and RAYMOND G. THIEME, JR., (Retired, Specially Assigned), JJ.

THIEME, J.

At issue in this case is whether the purchaser of a condominium in a foreclosure sale holds legal title to the property as of the date of the sale, thus rendering her liable for condominium assessments and fees dating from that point. We shall hold that she does, and thus affirm the judgment of the Circuit Court for Queen Anne's County.

## BACKGROUND

The facts are not in dispute.[1] Accordingly, the issue presented may be resolved as a matter of law. The circuit court's ruling is thus subject to *de novo* review. *600 North Frederick Road, LLC v. Burlington Coat Factory of Maryland, LLC,* 419 Md. 413, 432 (2011). *Cf. Heat & Power Corp. v. Air Products & Chemicals, Inc.,* 320 Md. 584, 590–91, 578 A.2d 1202 (1990) (*de novo* review of summary judgment ruling).

Appellant Elizabeth Campbell is the owner of the condominium property at 902 Auckland Way in Chester, Maryland ("Property"). The property is a unit within the Bayside Condominium Regime, and Ms. Campbell became its owner after her successful bid at a trustee's foreclosure sale conducted on August 3, 2009 by the holder of the deed of trust. The terms of the trustee's sale provided in part:

TERMS OF SALE: ... Adjustments on all taxes, public charges and special and regular assessments will be made as of the date of the sale and thereafter assumed by the

---

1. The parties stipulated that there were no factual issues in dispute. The circuit court thus ruled on the question before us as a matter of law.

purchaser. If applicable, condominium and/or homeowner association dues and assessments that may become due after the time of sale will be the responsibility of the purchaser. Title examination, conveyancing, state revenue stamps, transfer taxes, title insurance, and all other costs incident to settlement are to be paid by the purchaser....

The sale was ratified by the circuit court on November 25, 2009, and Ms. Campbell settled on the property on December 28, 2009. The deed was recorded in the land records of Queen Anne's County on January 7, 2010. Ms. Campbell did not pay the condominium fees that had accrued from the date of the foreclosure sale, but instead paid only those condominium fees due from the date of settlement forward.

As a result of her refusal to pay the condominium fees that were due for the interval between the dates of the foreclosure sale and the execution of the deed, counsel for the Council of Unit Owners of Bayside Condominium, the governing body of the condominium regime, sent Ms. Campbell a letter notifying her of Bayside's intent to create a condominium lien "with the ultimate intent of foreclosing on [her] property." In its Notice, Bayside claimed

> ... common expenses of the Condominium applicable to the [Unit] ... for the period August 3, 2009 through February, 2010 totaling $1,552.44, late charges in the amount of $70.00, with interest bearing thereon at the rate of 18% per annum totaling $116.90 as of March 28, 2010, acceleration of condominium assessments through the fiscal year ending December 31, 2010 in the amount of $2,316.90, as well as the cost and expenses of $500.00, which includes reasonable attorneys' fees ...

On March 9, 2010, Ms. Campbell responded by filing suit in the Circuit Court for Queen Anne's County pursuant to Section 14–203(c) of the Maryland Contract Lien Act, Md.Code (1974, 2003 Repl.Vol., 2009 Supp.), § 14–203 of the Real Property Article ("Real Prop."), seeking to "[d]eny the lien sought

by [Bayside]" and for attorneys fees and costs.[2] The circuit court conducted a hearing on June 28, 2010. On June 28, 2010, the court, Hon. Thomas G. Ross, ruled that, as a matter of law, Ms. Campbell was not entitled to relief. Judge Ross's Memorandum and Order frames the parties' respective positions as follows:

> Campbell's argument is based upon the By–Laws of Council, specifically the definitions of "owner" and "unit owner." Owner is essentially any person(s) or entity that "... owns a Condominium Unit ...," while Unit Owner is one holding "legal title.:" Unit owners are responsible for assessments under the Council's By–Laws. Since foreclosure purchasers have equitable title only, Campbell asserts that she is not liable for assessments until after the sale was ratified and the deed recorded. On the other hand, Council notes that foreclosure purchasers are responsible for all assessments after the purchase. The notice of the foreclosure sale identifies the property and, as terms of sale, includes as adjustments after ratification "... all taxes, public charges and special or regular assessments will be made as of the date of sale and thereafter assumed by purchaser [and] [i]f applicable, condominium and/or homeowner association dues and assessments that may become due after the time of sale will be the responsibility of the purchaser."

> Council essentially points out that any reliance on § 11–110(c) is misplaced. The sale at issue was a foreclosure

---

**2.** The Maryland Contract Lien Act is set forth at Md.Code (1974, 2003 Repl.Vol., 2009 Repl.Vol.), §§ 14–201 *et seq.* of the Real Property Article ("Real Prop."). At the time this action was filed, Real Prop. § 14–203(c) provided in pertinent part:

> [§ 14–203] (c)(1) A party to whom notice is given under subsection (a) of this section may, within 30 days after the notice is served on the party, file a complaint in the circuit court for the county in which any part of the property is located to determine whether probable cause exists for the establishment of a lien.

Real Prop. § 14–203(c) thus authorizes an action for the determination of whether probable cause exists for the establishment of a lien. Real Prop. § 14–203(d) places the burden of proof on the party seeking to impose the lien.

sale. In addition to the published notice of sale, case law supports the proposition that the foreclosure purchaser is liable for all condominium dues and assessments from the date of sale, having acquired equitable title on the date of sale and legal title at ratification of the sale, retroactive to the date of sale. Campbell's reliance on *Simard v. White,* 383 Md. 257 [859 A.2d 168] (2003) is misplaced. In its opinion, at page 273, the Court of Appeals quoted from *Union Trust Co. v. Biggs,* 153 Md. 50, 56 [137 A. 509] (1927), as follows:

> ... legal title does not vest until the deed to him is delivered, but, upon its delivery, this deed is not effective merely from the day of its execution but vests the property in the purchaser from the day of sale. *See also, Merryman v. Bremmer,* 250 Md. 1 [241 A.2d 558] (1968); *Lannay v. Wilson,* 30 Md. 257 (1869) (after final ratification, the purchaser is the owner from the day of sale).

Memorandum Opinion and Order at 2 (footnotes omitted). Judge Ross concluded that there was probable cause for the creation of a lien, entered the appropriate order and this appeal followed.

### DISCUSSION

Appellant seeks to overturn the circuit court's ruling, and maintains that her liability for assessments is governed, and limited by, Real Prop. § 11–110(c), which relevantly provides [3]:

> (c) A unit owner shall be liable for all assessments, or installments thereof, coming due while he is the owner of a unit. In a voluntary grant the grantee shall be jointly and severally liable with the grantor for all unpaid assessments against the grantor for his share of the common expenses up to the time of the voluntary grant for which a statement of lien is recorded, without prejudice to the rights of the grantee to recover from the grantor the amounts paid by the grantee for such assessments. Liability for assessments

---

**3.** The Maryland Condominium Act is set forth in Title 11 of the Real Property Article. *see* Real. Prop. §§ 11–101-11–143.

may not be avoided by waiver of the use or enjoyment of any common element or by abandonment of the unit for which the assessments are made.

She asserts that because she did not acquire title until December 28, 2009, the date on which the deed was executed, she was not the "owner" of the property until that date, and thus could not be "liable for all assessments, or installments thereof," prior to December 28. She emphasizes that Bayside's developer "carefully tracked" this statutory language when crafting the condominium bylaws that governed the "Non–Payment of Assessment." She concludes that, given the applicable provision of the Maryland Condominium Act and the related bylaw provision, she could not be liable for the assessments at issue in this case because she was not the "owner" during the interval subject to the assessment. Bayside, for its part, maintains that Ms. Campbell, as a foreclosure purchaser, obtained an "inchoate and equitable title" that become complete upon ratification, but then "the ratification retroact[ed]" such that she is recognized as the owner from the date of the sale. We agree with Bayside and explain.

In *Merryman v. Bremmer*, 250 Md. 1, 241 A.2d 558 (1968), the trustee, Merryman, filed a petition to set aside the sale of certain real estate to the respondent, one Bremmer. The chancellor directed the trustee to execute a deed conveying the property to Bremmer, so long as Bremmer paid the balance due on the purchase and applicable taxes. The Court of Appeals upheld the chancellor's ruling. The Court ruled, *inter alia*, that Bremmer was entitled to maintain his equitable title, even, we note, over the passage of a considerable number of years, subject to remedies at law that the trustee could, but did not, utilize to compel Bremmer to comply with the terms of the sale. On this issue, Judge Barnes said for Court:

The sale involved in the present case is a judicial sale of real estate and not a conventional sale. Our predecessors have established the rights of the parties when land is sold at a judicial sale. A sale made by order of court is an executory contract, subject to the filing of exceptions.

*Hunting v. Walter,* 33 Md. 60 (1870). The court itself is the vendor, the trustee being merely the agent of the court to carry into effect the order of court directing the sale, and upon final ratification of the sale by the court the contract of purchase becomes complete. *Lurman v. Hubner,* 75 Md. 268, 23 A. 646 (1892). When the sale is finally ratified, the purchaser's inchoate equitable title, acquired at the time of the acceptance of his offer by the trustee, becomes complete and the purchaser's equitable title is established retroactively to the time of the original acceptance of the offer by the trustee. The purchaser is entitled to the rents and profits of the land sold as he has become the substantial owner of the property. He is not only entitled to possession of the property, but it remains at his risk, even though legal title may not be conveyed. *Farmers' Bank v. Clark [Clarke],* 28 Md. 145 (1868). Miller, Equity Procedure § 512, page 604 (1897). If the land appreciates in value that benefit accrues to the purchaser; if it depreciates in value that is the purchaser's loss. The purchaser is entitled to maintain his equitable title as the substantial owner of the land until he is divested of it as provided by law. The legal procedures to accomplish such divesting are well established.

*Merryman v. Bremmer,* 250 Md. at 8, 241 A.2d 558.

The case of *Donald v. Chaney,* 302 Md. 465, 488 A.2d 971 (1985) is instructive. *Donald* involved the foreclosure of certain partnership property, Herring Bay Partnership. Three of the partners were also junior creditors, who sought a distributive share in the proceeds of the foreclosure sale. When it became apparent that the available proceeds were insufficient to pay the partners in full, they petitioned for a court order for the collection of interest on the unpaid balance of the foreclosure purchase price, reasoning that the interest would be applied to their claims. The Court of Appeals vacated the denial of the claims. The Court ruled that the foreclosure purchasers were liable for interest from a date following ratification of the sale to the date of settlement. Writing for the Court, Judge Menchine quoted from two venerable Maryland cases:

"It is a general rule as to sales under decrees of this Court, that the purchaser always pays interest, according to the terms of the decree, from the day of sale, whether he gets possession or not. *His getting possession is, in no case, allowed to be a condition precedent to the payment of either principal or interest of the purchase money.* The purchaser is presumed to regulate his bidding with a view to the known powers and rules of the Court as to delivering possession. There is, therefore, nothing in this objection, even supposing this purchaser himself to have been in no default; and, by promptly giving his bond, to have so clothed himself with an equity to demand a delivery of possession immediately after the sale had been finally ratified."

*Donald v. Chaney,* 302 Md. at 468–69, 488 A.2d 971 (emphasis in original) (quoting *Brown v. Wallace,* 2 Bland 585, 594, 4 G. & J. 479, 486 (1830)). The Court added,

"It is certainly true that a contract of sale made between the Court as the vendor of the property, through the agency of a trustee, and the purchaser, is never regarded as consummated until it has received the sanction and ratification of the Court. . . .

Although this is the character of the imperfect right acquired by a purchaser at a sale of this kind; yet, it gives to him, an inchoate and equitable title which becomes complete by the ratification of the Court. When this is accomplished, the ratification retroacts, and he is regarded by relation as the owner from the period of the sale. He is as such proprietor entitled to the intermediate rents and profits of the estate; he cannot escape from the sale, because, he may believe it to be disadvantageous, and *is bound to pay interest on the purchase money from its date;* and has, therefore, a direct and strong interest in protecting the property from injury, and rendering it as productive as possible."

*Id.,* 302 Md. at 469, 488 A.2d 971 (emphasis in original) (quoting *Wagner, et al. v. Cohen,* 6 Gill 97, 102–03 (1847)). In

*Union Trust Company v. Biggs,* 153 Md. 50, 55–56, 137 A. 509 (1927), the Court said:

> After the foreclosure sale the purchaser had the equitable interest in the land commensurate with that conveyed by the mortgage deed, and he was entitled to the legal title upon the final ratification of the sale by the court and the payment of the purchase money. The assignee [of the mortagee], on the other hand, *held the legal title in trust for the purchaser* for the completion of the sale by its ratification, the satisfaction of the purchase price, and the delivery of the deed, subject to the right to enforce the payment of any of the purchase money by a resale at the risk of the buyer. So the whole beneficial ownership or estate of both the assignee and the mortgagor had passed from the land into the obligation of the purchaser to pay. In short, after the sale, equity regarded the property in the land as in the buyer, and the property or the price as in the assignee and mortgagor. It is true that the sale is incomplete until ratified by the court, and that the purchaser's title is an inchoate and equitable one from the day of sale until the final ratification, which, however, retroacts so that the purchaser is regarded by relation as the equitable owner from the time of the sale, and entitled to all the intermediate rents and profits of the estate. Although he thus becomes the substantial owner from the time of the sale, and the property is at his gain if it appreciate and at his risk in case of loss by fire or through depreciation, yet, notwithstanding the purchase money be paid, the legal title of the purchaser does not vest until the deed to him is delivered, but, upon its delivery, this deed is not effective merely from the day of its execution, but vests the property in the purchaser from the day of sale. It follows that, after the day of sale, the mortgagor's equity of redemption generally ceases to exist as an interest in land. The day of sale, therefore, marked the close of the period in which any creditor could acquire a lien upon the mortgagor's interest in the mortgaged land or equity of redemption by simply obtaining a judgment against the mortgagor, since a judgment lien upon real

estate or an equitable interest in land only exists because it gives the judgment creditor the right to make his debt out of the land or equitable interest in land of the judgment debtor, with the correlative liability of such property of the debtor to be sold by way of execution for that purpose.

It is apparent from the above-authorities that the purchaser at a foreclosure or judicial sale is in a unique position because of the particular nature of those transactions. From the date of the foreclosure sale, Ms. Campbell was the equitable owner of the property, see *Four Star Enterprises Ltd. Partnership v. Council of Unit Owners of Carousel Center Condominium, Inc.*, 132 Md.App. 551, 573–74, 752 A.2d 1272 (2000) (quoting *Merryman v. Bremmer*, 250 Md. at 8, 241 A.2d 558), with her enjoyment of any benefits of that ownership balanced by the obligations of that ownership during that interval. *Cf. Simard v. White*, 383 Md. 257, 323, 859 A.2d 168 (2004) (observing that foreclosure purchaser bears risk of property "upon his bid" and should act "to protect the equitable interest that he has received following the foreclosure sale.") We conclude that Ms. Campbell is liable for the condominium assessments from the date of the foreclosure sale.

We are not persuaded that the Maryland Condominium Act dictates a contrary result. Certainly, a party becomes liable for condominium assessments "coming due while he is the owner of a unit." Real Prop. § 11–110(c). Our holding today does no violence to the workings of the Act, because it does not detract from the ordinary definition of the term "owner." Although the Act defines "unit owner" as a person holding *legal* title, see Real Prop. § 11–101(r), given the authorities set forth above, we must conclude that the term "unit owner" embraces a holder of equitable title, whose rights are virtually ironclad so long as she fulfills her obligations under the terms of the foreclosure.[4] In the unique realm of foreclosure or

---

4. This is essentially an application of the doctrine of "equitable conversion," which doctrine was admirably explored by Judge Marvin H. Smith in *Himmighoefer v. Medallion Industries, Inc.*, 302 Md. 270, 278–80, 487 A.2d 282 (1985). It would be incongruous to permit a foreclo-

similar purchases, the long-settled view that the purchaser's title "retroacts" to the date of the sale means, for purposes of the Act, that Ms. Campbell became the "owner" at the time of the foreclosure sale, with the attendant rights and obligations of that status.[5] On this record, we conclude that Ms. Campbell is liable for condominium assessments from the date of the foreclosure sale.

In our view, Judge Ross was correct in his ruling.

**JUDGMENT AFFIRMED.**

**APPELLANT TO PAY COSTS.**

---

sure purchaser of a condominium unit to escape assessments that would otherwise not be paid, and still have an equitable title to the property dating to the foreclosure sale and enjoy any benefits that accrue from that ownership.

5. A principal canon of statutory interpretation is to "ascertain and effectuate the intention of the legislature ... we look first to the language of the statute, giving it its natural and ordinary meaning." *Maryland-National Capital Park & Planning Comm. v. Anderson*, 395 Md. 172, 182, 909 A.2d 694 (2006) (internal quotation marks and citations omitted). Should any provision be viewed as ambiguous, then one tool of statutory construction is to ascertain the legislature's meaning in light of judicial interpretations of a term. *Cf. Centre Insurance Company, et al. v. J.T.W*, 397 Md. 71, 80, 916 A.2d 235 (2006) (judicial construction resorted to only in case of ambiguity) (internal quotation and citations omitted). The General Assembly is presumed to be familiar with the holdings of the Court of Appeals. *Health Services Cost Review Com. v. Holy Cross Hospital, Inc.*, 290 Md. 508, 519, 431 A.2d 641 (1981). In this case, we are confident that the definition of the term "owner" as set forth in Real Prop. § 11–101(r) would embrace a foreclosure purchaser, even if that party holds an equitable title at the time of purchase, because, as noted, the purchaser's title would "retroact" to the date of the foreclosure sale upon execution of the deed.